MELVIN L. POWERS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 38805–86.          Filed May 25, 1993.

---

*Robert I. White* and *Lawrence W. Sherlock,* for petitioner.
*William G. Bissell* and *John F. Eiman,* for respondent.

COLVIN, *Judge:* This case is before the Court on petitioner's motion for award of reasonable litigation costs pursuant to section 7430 and Rule 231.

Respondent determined that petitioner was liable for: (1) Deficiencies of $496,054 for 1978 and $1,288,316 for 1979; (2) additions to tax for negligence under section 6653(a) of $24,803 for 1978 and $64,416 for 1979; and (3) increased interest for tax-motivated transactions under section 6621(d). When the case was settled, the total amount in dispute was $7,145,266.71. In that settlement, respondent conceded that no deficiency was due.

We must decide the following issues:

(1) Whether the fact that respondent's position is presumed correct provides substantial justification (i.e., a basis in both fact and law) for respondent's position where respondent had no information and made no attempt to obtain information about the case before adopting the position. We hold that it does not.

(2) Whether petitioner meets the net worth requirements of 28 U.S.C. section 2412(d)(1)(B) (1988). We hold that he does.

(3) Whether any litigation costs should be disallowed because of unreasonable delays in the proceeding caused by petitioner. We hold that no costs should be excluded on this ground.

(4) Whether special skills were required by petitioner's counsel to warrant an award of attorney's fees higher than $75 per hour, adjusted for increases in the cost of living. We hold that special skills were not required.

(5) Whether the number of hours billed by petitioner's counsel and petitioner's other litigation costs were reasonable. We hold that they were.

A hearing was held on petitioner's motion. In accordance with Rule 232, the parties have submitted affidavits and memoranda supporting their positions. We decide the motion based on the hearing record, petitioner's motion, respondent's objection, affidavits and exhibits thereto, and briefs provided by the parties.

Unless otherwise indicated, section references are to the Internal Revenue Code, and Rule references are to the Tax Court Rules of Practice and Procedure.

## TABLE OF CONTENTS

FINDINGS OF FACT

1. Petitioner and His 1978 and 1979 Tax Returns ........................... 460
2. Petitioner's Consents To Extend the Time To Assess Tax ........... 460
3. Petitioner's Chapter 11 Bankruptcy .............................................. 461
4. Petitioner's Termination of Consent To Extend the Time To Assess Tax ....................................................................................... 461
5. Issuance of the Notice of Deficiency for 1978 and 1979 ................ 461
6. The Petition .................................................................................... 464
7. Conversion of Petitioner's Chapter 11 Bankruptcy to Chapter 7 . 464
8. Review of Petitioner's Records by Agent States ............................ 464
9. Conclusion of Bankruptcy Case ...................................................... 465
10. Petitioner's Net Worth .................................................................. 465
11. Pretrial Proceedings and Case Settlement .................................... 465
12. Petitioner's Litigation Costs .......................................................... 468

OPINION

1. Motion for Litigation Costs: Introduction ...................................... 469
2. Whether Respondent's Position Was Substantially Justified ....... 470
3. Net Worth Requirement ................................................................. 483
4. Whether Petitioner Unreasonably Protracted Any Portion of the Proceeding ........................................................................... 486
5. Applicable Hourly Rate for Attorney's Fees ................................... 488

6. Amount of Reasonable Litigation Costs ........................................... 491
7. Petitioner's Motion for Sanctions ..................................................... 494

FINDINGS OF FACT

## 1. *Petitioner and His 1978 and 1979 Tax Returns*

Petitioner resided in Houston, Texas, when he filed his petition. He has an eighth grade education and has had no legal or accounting training. In 1978 and 1979, petitioner conducted a real estate leasing business in Houston. In 1978 and 1979, he built, put in service, owned, and operated five office building complexes in Houston, and leased office space therein to tenants. Petitioner filed income tax returns for 1978 and 1979 on October 16, 1979, and October 20, 1980,[1] respectively.

Petitioner's C.P.A., Kenneth Warren (Warren), prepared petitioner's 1978 and 1979 returns. Warren was an employee of petitioner from 1980 to November 1986, when petitioner's leasing business went into chapter 7 bankruptcy. Warren, with the assistance of others, kept the books for petitioner's business.

## 2. *Petitioner's Consents To Extend the Time To Assess Tax*

In 1982 and 1983, at respondent's request, petitioner executed Forms 872-A, Special Consent to Extend the Time to Assess Tax, for 1978 and 1979. Respondent did not attempt to examine petitioner's books and records for 1978 and 1979 during the 3-year period for assessment of tax provided by section 6501(a).

Before seeking petitioner's consent, respondent had decided, if petitioner did not consent, not to issue a notice of deficiency; i.e., to let the statute of limitations bar assessment for petitioner's 1978 and 1979 years. Respondent also had decided not to contact petitioner or examine his books and records for 1978 and 1979. Memoranda stating respondent's decisions to let the statute of limitations bar assessment and not to contact petitioner were contained in petitioner's Exhibits 28 and 29.

On his 1978 return, petitioner claimed $8,959 in deductions from Mohave Minerals and reported income of $1,358

---

[1] Although petitioner did not object to respondent's proposed finding that he filed his 1979 return on Oct. 20, 1980, we note that the return appears to be date stamped Oct. 15, 1980.

from Sugar Creek Coal Mine, Ltd. In 1982, respondent examined and inserted examination reports for both of these entities in petitioner's file.

## 3. *Petitioner's Chapter 11 Bankruptcy*

In December 1983, in part because of the downturn in the Houston economy, petitioner filed a petition in bankruptcy under chapter 11. He filed a plan of reorganization which was approved by the bankruptcy court. On May 3, 1985, he resumed his business operations under the plan of reorganization.

## 4. *Petitioner's Termination of Consent To Extend the Time To Assess Tax*

Petitioner's tax counsel during most times relevant here was Robert I. White (White). On White's advice, on March 31, 1986, petitioner executed Forms 872-T, Notice of Termination of Special Consent to Extend the Time to Assess Tax, for his 1978 and 1979 years. As a result, the time to assess tax would expire on July 2, 1986. Up to that time, respondent had not attempted to contact petitioner (except to request that he sign the Forms 872-A), nor sought to audit petitioner's 1978 and 1979 returns or examine his 1978 and 1979 books and records.

## 5. *Issuance of the Notice of Deficiency for 1978 and 1979*

On April 14, 1986, the file for petitioner's 1978 and 1979 years was assigned to Revenue Agent Larry Hoole (Hoole). On April 17, Hoole discussed the case by telephone with District Counsel Attorney David Johnson (Johnson). As discussed below, at that time Johnson was counsel for respondent on cases involving petitioner's 1976 and 1977 tax years.

As a result of his review, Hoole proposed to disallow all of petitioner's deductions of $9,000 or more except for charitable contributions. Hoole submitted a Revenue Agent's Report (RAR) to his group manager, Douglas Pierre (Pierre), on April

25, 1986. Hoole proposed that respondent disallow the following Schedule C deductions:

*Petitioner's Schedule C Expenses in Excess of $9,000*

| Item | 1978 return | Allowed in notice of deficiency | 1979 return | Allowed in notice of deficiency |
|---|---|---|---|---|
| Promotion | $254,374 | -0- | $706,599 | -0- |
| Depreciation | 221,900 | -0- | 646,477 | -0- |
| Business interest | 220,370 | -0- | 352,269 | -0- |
| Taxes | 137,702 | -0- | 59,539 | -0- |
| Rent for business property | 122,466 | -0- | 204,345 | -0- |
| Commissions | 66,243 | -0- | 107,712 | -0- |
| Insurance | 55,158 | -0- | 232,520 | -0- |
| Legal and professional | 54,674 | -0- | 152,432 | -0- |
| Wages | 40,119 | -0- | 310,961 | -0- |
| Telephone and telegraph | 38,836 | -0- | 76,312 | -0- |
| Janitorial | 35,716 | -0- | 309,456 | -0- |
| Travel and entertainment | 32,138 | -0- | -0- | -0- |
| Supplies | 31,164 | -0- | 121,766 | -0- |
| Utilities | 28,991 | -0- | 351,864 | -0- |
| Temporary help | 17,149 | -0- | -0- | -0- |
| Repairs | 11,873 | -0- | 771,735 | -0- |
| Employee relations | 10,795 | -0- | N/A | - - - |
| Direct labor | 10,533 | -0- | N/A | - - - |
| Management fees | 10,050 | -0- | N/A | - - - |
| Cars and truck | 9,985 | -0- | 138,765 | -0- |
| Contract services | N/A | - - - | 115,705 | -0- |
| Advertising | N/A | - - - | 63,460 | -0- |
| Landscaping | N/A | - - - | 47,022 | -0- |
| Directories | N/A | - - - | 37,140 | -0- |
| Security | N/A | - - - | 35,199 | -0- |
| Freight | N/A | - - - | 11,712 | -0- |

Pierre forwarded the RAR and the case file to the Houston District Director's quality review staff. The RAR said in part that "Based on items on return and lack of time on statute, to protect the government interest the deductions listed on Form 4549-B cannot be allowed."

Ms. Kathleen Endres of the quality review staff drafted a proposed notice of deficiency. On June 2, 1986, she forwarded it to Houston District Counsel for review under Internal Revenue Manual section 4469 [2] with a document transmittal indicating the statute of limitations would expire on July 2, 1986.

[2] I.R.M. sec. 4469(3) states that "review by District Counsel not only covers the wording of the explanatory paragraphs in the notice but also the merits of the various adjustments upon which the proposed deficiencies are based." 2 Audit, Internal Revenue Manual (CCH), sec. 4469, at 7917. I.R.M. sec. 4469(4)(c) further provides that all notices proposed for issuance in certain specified cases will be forwarded to District Counsel, including "cases in which the notice is issued prior to the complete investigation of the tax liability, due either to the running of the statute of limitations or the uncooperativeness of the taxpayer". *Id.*

On June 3 or 4, 1986, District Counsel assigned the case to Johnson for review. Johnson had been counsel for respondent for petitioner's 1976 and 1977 years since 1984, or earlier. Also, Johnson had previously dealt with petitioner's 1978 and 1979 tax returns. Respondent had examined petitioner's 1976 and 1977 returns and determined deficiencies for those years, and petitioner filed Tax Court petitions (docket Nos. 7766-81 and 719-82). In 1983 and 1985, petitioner amended those petitions to raise the issue of net operating loss (NOL) and investment tax credit carrybacks from 1978 and 1979 (the years at issue here) to 1976 and 1977. Johnson was of counsel for respondent in respondent's motions for partial summary judgment in those cases. In the motions, respondent contended that, because of certain language on the 1978 and 1979 returns, petitioner waived his right to carry back the NOL's.

Johnson also knew that, before sending the Form 872-A for 1979 to petitioner, the Internal Revenue Service (IRS) had decided not to audit petitioner and had decided (but not disclosed to petitioner) that if petitioner did not sign the Form 872-A, respondent would let the statute of limitations for 1979 bar assessment of tax for that year. When he reviewed the proposed notice of deficiency, Johnson had no basis for believing petitioner's 1978 and 1979 returns were not correct. There was nothing in the file suggesting that petitioner had improperly claimed deductions. Johnson reviewed the administrative file and, on June 10, 1986, approved the notice with minor changes.

On July 1, 1986, respondent timely issued a deficiency notice to petitioner for 1978 and 1979. In the notice of deficiency, respondent determined that, for 1978 and 1979: (1) Petitioner was entitled to no deductions greater than $9,000 (except charitable contributions); (2) petitioner was liable for the addition to tax for negligence under section 6653(a); and (3) petitioner was liable for additional interest under section 6621 for the entire deficiency.

Respondent did not try to contact petitioner to audit his 1978 and 1979 returns or to examine his books and records before issuing the notice of deficiency. Petitioner did not call the IRS within 90 days after receiving the notice.

## 6. *The Petition*

Petitioner filed the petition on September 29, 1986. Petitioner's counsel were White and Linda Paine (Paine). The petition disagrees with all of respondent's adjustments. Paragraph 5-E of the petition alleges, in part, that the notice of deficiency was "arbitrary, capricious, excessive, and devoid of rational foundation." Respondent filed the answer on November 7, 1986, generally denying allegations in the petition. White did not contact Johnson, and Johnson did not contact White, to discuss the case before the answer was filed.

Petitioner could not continue to pay Warren, and let him go in November 1986. Petitioner's books and records were in good order until late September or early October 1986.

## 7. *Conversion of Petitioner's Chapter 11 Bankruptcy to Chapter 7*

In October 1986, petitioner's creditors filed a motion in the U.S. Bankruptcy Court for the Southern District of Texas to convert petitioner's bankruptcy proceeding from chapter 11 to chapter 7. Petitioner opposed the motion. The bankruptcy court granted the motion on November 12, 1986.

Ronald Sommers was petitioner's first bankruptcy trustee. He was succeeded by Jeff Compton (Compton). In January 1987, Compton seized all of petitioner's operations, caused petitioner to vacate his office premises, and took possession of his books and records for all years. Petitioner had access to his records on reasonable notice.

On April 27, 1987, we stayed all Tax Court proceedings pursuant to 11 U.S.C. section 362(a)(8) (1988).

## 8. *Review of Petitioner's Records by Agent States*

In April 1987, White and Paine withdrew from the Tax Court case. Johnson dealt with petitioner pro se until White reentered the case in June 1990.

In 1987, Revenue Agent Edward States (States) began to review petitioner's case. States went to the Arena Towers to examine petitioner's records. Petitioner's records were disorganized at that time. States worked 40 to 45 days in early 1987 at the Arena Towers with petitioner's records. States

concluded that the proposed deficiencies for 1978 and 1979 should be reduced as follows:

|  | 1978 | | 1979 | |
|---|---|---|---|---|
| Agent States' recommendation | Deficiencies | Additions to tax sec. 6653(a) | Deficiencies | Additions to tax sec. 6653(a) |
| Reduce from— | $496,054 | $24,803 | $1,288,316 | $64,416 |
| to— | 265,703 | 13,285 | 19,261 | 976 |

## 9. Conclusion of Bankruptcy Case

The bankruptcy court lifted the stay on proceedings before this Court on April 29, 1988, and denied petitioner's discharge in bankruptcy on June 30, 1989. The bankruptcy court rendered its memorandum opinion on August 17, 1990.

## 10. Petitioner's Net Worth

Petitioner had substantial negative net worth when the petition was filed on September 29, 1986. His largest assets and liabilities were office buildings and related bank debt. He had substantial negative net worth because, as of September 29, 1986, the value of the office buildings had dropped because of the downturn in the Houston economy, but he had not yet been discharged of the bank debt.

Petitioner's balance sheet used with petitioner's bankruptcy disclosure statement shows that he had a net worth of $1,348,457 on September 30, 1985. That figure is the net of assets of $100,645,882 and liabilities of $99,297,425. The assets include $50 million and $45 million, respectively, for the Arena I and II office buildings (total of $95 million). In 1987, those buildings were sold in a foreclosure sale for about $15 million each (total of $30 million). The buildings were worth many million dollars less than the amounts stated on the 1985 balance sheet as of September 29, 1986, when the petition was filed. On that date, petitioner had not yet been discharged of any of the related debts. Thus, he had substantial negative net worth when the petition was filed.

## 11. Pretrial Proceedings and Case Settlement

This Court entered an order on May 31, 1988, lifting the bankruptcy stay. Petitioner was pro se at that time. Between

June 1988 and June 1990, respondent attempted to persuade petitioner to settle the case based on States' recommendations. On June 9, 1988, Johnson spoke to petitioner by telephone, and on June 10, September 1 and 20, 1988, Johnson wrote petitioner to urge him to settle this case based on States' report. Petitioner did not respond to Johnson's letters. Petitioner attempted to delay settlement until he could afford the assistance of counsel and an accountant. We granted both of petitioner's continuance motions during those 2 years, over respondent's objection.

### a. *December 5, 1988, Houston Session*

This case was set for trial at the December 5, 1988, Houston trial session. Respondent prepared a trial memorandum; petitioner did not. We granted petitioner's motion for a continuance over respondent's objection.

### b. *May 15, 1989, Houston Session*

This case was calendared for trial at the May 15, 1989, Houston trial session. Respondent wrote petitioner on March 29 and April 28, 1989. Respondent prepared a trial memorandum; petitioner did not. We granted petitioner's continuance motion over respondent's objection, and we denied without prejudice respondent's motion to dismiss for lack of prosecution (at reduced deficiencies). We ordered petitioner to file, on July 1, 1989, a report on the status of his bankruptcy proceeding and a list of the issues for decision. Petitioner, still pro se, filed a report on June 26, 1989, but he did not list the issues for decision.

### c. *Petitioner's Efforts To Obtain Counsel To Resolve the Case*

In January 1990, White, who had not yet reentered an appearance in this case, and Johnson began working toward a tentative settlement of the case. On February 12, 1990, petitioner filed a motion proposing that a decision document based on that settlement be lodged with the Court but that it would be filed only if White had not entered an appearance by June 1, 1990. Respondent agreed to petitioner's motion. White reentered an appearance on June 1, 1990. Under the agreement, the proposed settlement did not take effect.

On June 7, 1990, Johnson wrote White to ask him to prepare petitioner's records for 1978 and 1979 so a revenue agent could examine them. White was then out of town. He returned to Houston in July, and spoke to Johnson by telephone. On September 10, 1990, Johnson wrote White again to ask him to prepare petitioner's records for review. White did not respond to the letter.

d. *February 25, 1991, Houston Session*

On September 21, 1990, the Court set this case for trial in Houston at the trial session beginning February 25, 1991. In late 1990, District Counsel reassigned this case from Johnson to William G. Bissell (Bissell). Johnson was Bissell's supervisor.

On December 20, 1990, Bissell telephoned White and offered to meet with him to review petitioner's records and to discuss settlement and preparation of a stipulation of facts. On January 2, 1991, Bissell wrote to White to confirm their December 20 conversation.

On January 15, 1991, Bissell again wrote to White and offered to meet with him when petitioner's records were organized to try to dispose of this case. On January 23, 1991, White spoke by telephone with Bissell regarding petitioner's case.

As of February 10, 1991, respondent's claim against petitioner was as follows:

|  | *1978* | *1979* | *Total* |
|---|---|---|---|
| Tax | $496,054.00 | $1,288,318.00 | $1,784,372.00 |
| Interest | 1,289,994.00 | 3,121,711.84 | 4,411,705.84 |
| Sec. 6653(a) | 24,803.00 | 64,416.00 | 89,219.00 |
| Sec. 6621(c) | 247,890.85 | 612,080.57 | 859,971.42 |
| Total | 2,058,741.85 | 5,086,526.41 | 7,145,268.26 |

In late 1990, petitioner rehired Warren, his former C.P.A., to help prepare this case for trial. Warren began work in January 1991.

Early in 1991, Warren, with Compton's permission, began to gather petitioner's 1978 and 1979 books, records, and C.P.A.'s workpapers. Sometime after Warren stopped working for petitioner in November 1986, the office manager at Arena Towers had thrown away petitioner's original books of

account, the original transactional documents supporting entries in the books of account, and accountant's workpapers. The only records remaining were alphabetized paid invoices and copies of the checks. Petitioner could not find some bank statements and copies of some checks. Petitioner had all of the paid invoices for deductions claimed on his 1978 and 1979 returns.

This case was reassigned to States. He was assisted by Revenue Agent Monica Richardson and Warren. Warren presented the substantiation to respondent's agents at White's office. White met with them occasionally.

At the calendar call on February 25, 1991, the parties announced that most of the issues in the case had been settled. The case was fully settled during the 2-week session. Petitioner provided some additional substantiation after February 22, 1991. On February 27, 1991, the parties stipulated that petitioner had a net operating loss of $1,593,743 for 1979 instead of taxable income of $1,867,901 as determined in the notice of deficiency. On February 28, 1991, the parties agreed that petitioner had a net loss of $182,209.26 for 1978. On March 5, 1991, the parties stipulated that there was no deficiency in tax or additions to tax due from, nor overpayment due to, petitioner for 1978 and 1979.

## 12. *Petitioner's Litigation Costs*

Petitioner filed the motion for an award of reasonable litigation costs on April 5, 1991. Petitioner incurred attorney's fees and litigation costs for services performed in this matter from January 1990 through January 23, 1992, as follows:

| Date of services | Amount of fee | Attorney hours | Amount of costs |
|---|---|---|---|
| January 1990 to January 1991 | $5,438.75 | 22.60 | - - - |
| February 1991 | 31,290.00 | 144.00 | - - - |
| March 1991 | 4,671.25 | 18.75 | $1,078.60 |
| Nov. 6, 1991 | 20,211.25 | 176.00 | 791.23 |
| Jan. 23, 1992 | 23,675.00 | 108.75 | 570.94 |
| Total | 85,286.25 | 470.10 | 2,440.77 |

| Date of services | Amount of fee | Accountant hours |
|---|---|---|
| February 1991 | $12,500 | 165 |

| Date of bill | Amount of expert / witness fee |
|---|---|
| Nov. 6, 1991 | $4,910 |
| Jan. 23, 1992 | 9,750 |

| Date of bill | Amount of fee | Paralegal hours |
|---|---|---|
| Apr. 3, 1991 | $3,731.25 | 23.85 |
| Jan. 23, 1992 | 1,204.25 | 9.85 |

OPINION

1. *Motion for Litigation Costs: Introduction*

Generally, a taxpayer who has substantially prevailed in a Tax Court proceeding may be awarded reasonable litigation costs. Sec. 7430(a). To be entitled to an award, the taxpayer must:

(a) Exhaust administrative remedies. Sec. 7430(b)(1). At the hearing on petitioner's motion for litigation costs, respondent conceded that petitioner meets this requirement.

(b) Substantially prevail with respect to the amount in controversy. Sec. 7430(c)(4)(A)(ii)(I). Respondent concedes petitioner meets this requirement.

(c) Show that the position of the United States in the action was not substantially justified. Sec. 7430(c)(4)(A)(i); and

(d) Be an individual whose net worth did not exceed $2 million, or an owner of an unincorporated business, or any partnership, corporation, etc., the net worth of which did not exceed $7 million when the petition was filed. Sec. 7430(c)(4)(A)(iii); 28 U.S.C. sec. 2412(d)(2)(B).

Respondent concedes that the position of the United States for purposes of this motion is the position taken by respondent in the notice of deficiency issued on July 1, 1986. The petition in this case was filed on September 29, 1986. For proceedings commenced after 1985 and before November 10, 1988, section 7430(c)(4), as added by the Tax Reform Act of 1986, Pub. L. 99-514, section 1551(e), 100 Stat. 2753, provides that the "position of the United States" includes the position taken in Court, and "any administrative action or inaction by the District Counsel". Thus, respondent's position for purposes of this motion is the position taken in the notice of deficiency.

Appellate courts apply an abuse of discretion standard in reviewing a trial court's decision: (1) Regarding the overall amount of a prevailing party's award for litigation costs, see *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983); (2) whether the Government's position was not substantially justified under the Equal Access to Justice Act (EAJA), 28 U.S.C. section 2412 (1988), *Pierce v. Underwood,* 487 U.S. 552, 558-559 (1988);[3] and (3) whether to award litigation costs under section 7430, *Comer Family Equity Pure Trust v. Commissioner,* 958 F.2d 136, 139 (6th Cir. 1992), affg. T.C. Memo. 1990-360; *Cassuto v. Commissioner,* 936 F.2d 736, 740 (2d Cir. 1991), affg. in part and revg. in part 93 T.C. 256 (1989); *Bode v. United States,* 919 F.2d 1044, 1047 (5th Cir. 1990) (review overall amount of a prevailing party's section 7430 litigation costs award under the abuse of discretion standard, and subsidiary findings of fact for clear error); *Zinniel v. Commissioner,* 883 F.2d 1350, 1355 (7th Cir. 1989), affg. 89 T.C. 357 (1987).

## 2. *Whether Respondent's Position Was Substantially Justified*

### a. *Substantial Justification: Reasonable Basis in Fact and Law*

Petitioner must establish that the position of the United States in the litigation was not substantially justified. Sec. 7430(c)(4)(A)(i). The substantially justified standard is a reasonableness standard; i.e., whether respondent's position had a reasonable basis both in fact and law. *Pierce v. Underwood, supra* at 564.

Congress enacted section 7430 in 1982. Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, sec. 292(a), 96 Stat. 572. Among other requirements, a taxpayer was required to show that the position of the United States was unreasonable. The legislative history listed some factors which might be considered in deciding what constitutes unreasonable conduct by the Commissioner:

---

[3] In enunciating the abuse of discretion standard, the Supreme Court in *Pierce v. Underwood,* 487 U.S. 552, 558 (1988), said:

For purposes of standard of review, decisions by judges are traditionally divided into three categories, denominated questions of law (reviewable *de novo*), questions of fact (reviewable for clear error), and matters of discretion (reviewable for "abuse of discretion"). * * *

The committee intends that the determination by the court on this issue is to be made on the basis of the facts and legal precedents relating to the case as revealed in the record. Other factors the committee believes might be taken into account in making this determination include, (1) whether the government used the costs and expenses of litigation against its position to extract concessions from the taxpayer that were not justified under the circumstances of the case, (2) whether the government pursued the litigation against the taxpayer for purposes of harassment or embarrassment, or out of political motivation, and (3) such other factors as the court finds relevant. * * * [H. Rept. 97-404, at 12 (1981).]

In 1986 Congress changed "unreasonable" to "not substantially justified", the standard applicable to EAJA, 28 U.S.C. section 2412. Tax Reform Act of 1986, Pub. L. 99-514, sec. 1551, 100 Stat. 2752; H. Conf. Rept. 99-841, at II-801 (1986), 1986-3 C.B. (Vol. 4) 801. The purpose of the change was to conform section 7430 more closely to EAJA. H. Conf. Rept. 99-841, *supra* at II-801, 1986-3 C.B. (Vol. 4) at 801. The "substantially justified" standard is not a departure from the "reasonableness" standard. *Weiss v. Commissioner,* 850 F.2d 111, 116 (2d Cir. 1988), revg. 89 T.C. 779 (1987); *Sokol v. Commissioner,* 92 T.C. 760, 763 n.7 (1989); *Sher v. Commissioner,* 89 T.C. 79, 84 (1987), affd. 861 F.2d 131 (5th Cir. 1988).

The legislative history of EAJA states that the possibility that the Government's position was not substantially justified is clearly raised "where there is a substantial difference between the amount or content of the government's original pleadings and the settlement agreed to." H. Conf. Rept. 96-1434, at 22 (1980). The fact that the Commissioner eventually loses or concedes the case is not in itself sufficient to establish that a position is unreasonable, *Broad Ave. Laundry & Tailoring v. United States,* 693 F.2d 1387, 1391-1392 (Fed. Cir. 1982); *Sokol v. Commissioner, supra* at 767; however, it "clearly remains" a factor to be considered, *Heasley v. Commissioner,* 967 F.2d 116, 120 (5th Cir. 1992), affg. in part and revg. in part T.C. Memo. 1991-189; *Estate of Perry v. Commissioner,* 931 F.2d 1044, 1046 (5th Cir. 1991). The taxpayer need not show bad faith to establish that the Commissioner's position was not substantially justified for purposes of a motion for litigation costs under section 7430. *Estate of Perry v. Commissioner, supra.*

b. *Substantial Justification, the Presumption of Correctness, and the Burden of Proof*

EAJA's substantially justified standard requires that the Government's position have a "reasonable basis in both fact and law." *Pierce v. Underwood, supra* at 563-564. That interpretation also applies to motions for litigation costs under section 7430, *Rickel v. Commissioner,* 900 F.2d 655, 665-666 (3d Cir. 1990), affg. in part and revg. in part 92 T.C. 510 (1989), including the requirement that the Commissioner's position have a reasonable basis in both fact and law. *Comer Family Equity Pure Trust v. Commissioner,* 958 F.2d at 139-140; *Norgaard v. Commissioner,* 939 F.2d 874, 881 (9th Cir. 1991).

The parties agree that the substantially justified standard requires that the Government's position have a reasonable basis in both fact and law. *Pierce v. Underwood, supra;* H. Conf. Rept. 96-1434, at 22 (1980). However, they disagree how that standard applies here. Respondent contends that there is a basis in law for the notice of deficiency because the notice of deficiency is presumed correct and petitioner has the burden of proving entitlement to deductions. *Interstate Transit Lines v. Commissioner,* 319 U.S. 590, 593 (1943); *New Colonial Ice Co. v. Helvering,* 292 U.S. 435, 440 (1934). Respondent argues that disallowing the deductions has a reasonable basis in fact because there was no substantiation in the administrative file when respondent issued the notice of deficiency. Respondent does not claim to have had any knowledge of or information about the merits of the case, or to have sought any, before adopting the position at issue here. Petitioner argues that respondent lacked a reasonable basis in both fact and law because respondent had no knowledge about the case when taking the position at issue here (i.e., the position in the notice of deficiency), and in fact had decided not to contact petitioner to obtain any information from him.

We have not previously decided whether respondent's position has a reasonable basis in both fact and law when it was not based on any information about the case. However, cases from other courts applying the reasonable basis in both fact and law standard favor petitioner's view. The Supreme Court said that for a position to be substantially justified, there

must be "substantial evidence" to support it. *Pierce v. Underwood, supra* at 564-565. The Supreme Court said:

Judicial review of agency action, the field at issue here, regularly proceeds under the rubric of "substantial evidence" set forth in the Administrative Procedure Act, 5 U.S.C. § 706(2)(E). That phrase does not mean a large or considerable amount of evidence, but rather "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). * * * [*Id.*]

The Supreme Court also explained substantially justified as "'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person", *id.* at 565, and indicated that this standard is no different from the "reasonable basis both in fact and law" formulation adopted by the vast majority of the Courts of Appeals. *Id.;* see, e.g., *Hanover Bldg. Matls., Inc. v. Guiffrida*, 748 F.2d 1011, 1015 (5th Cir. 1984).[4] In the instant case respondent's position had no factual or evidentiary basis. If some relevant evidence is required, *Pierce v. Underwood, supra,* then none is surely not enough. In addition to having no relevant evidence about the case, respondent had specifically decided not to contact petitioner to seek any. It has been held that the Government does not have a reasonable basis in both fact and law if it does not diligently investigate a case. *United States v. Estridge*, 797 F.2d 1454, 1458 (8th Cir. 1986) (award for litigation costs granted where Commissioner did not diligently investigate which of several persons was liable for tax of an employer under section 6672).

We conclude that respondent's position lacked a reasonable basis in fact and law because it had no factual basis and respondent made no attempt to obtain information about the case before adopting the position. We note that: (1) Respond-

---

[4] Earlier, the U.S. Court of Appeals for the Fifth Circuit had applied essentially the same reasoning in awarding litigation costs in a case where there was no evidence to support a position taken by the Secretary of Health and Human Services in a disability case. The Fifth Circuit said:

In the present case, the district court concluded that the Secretary's decision to deny disability benefits * * * was not supported by anything in the record before the agency. * * *

* * * * * * *

Although there is no presumption that fees must be awarded merely because the Secretary lost, the absence of support for the Secretary's decision in this case is at once an absence of justification for her position.

*Herron v. Bowen*, 788 F.2d 1127, 1132 (5th Cir. 1986); *Baker v. Bowen*, 839 F.2d 1075, 1080 (5th Cir. 1988).

ent made no effort to contact petitioner during the 3 years allowed by section 6501 to assess tax or the 3 additional years in which petitioner agreed to extend the period to assess tax; (2) respondent had decided to let the statute of limitations bar assessment of tax against petitioner if he did not sign the Forms 872-A, and had decided not to contact petitioner to obtain information about the returns; (3) petitioner had not failed to respond or cooperate with respondent before respondent took the position in issue; and (4) respondent's counsel had prior familiarity with petitioner's tax returns for the years at issue which should have led him to doubt that respondent's position would substantially prevail.

### c. *The Issue Is Not Whether the Notice of Deficiency Was Valid*

Respondent argues that the position of the United States here was substantially justified because the notice of deficiency was valid. Respondent relies on cases holding that a notice of deficiency: (1) Is legally sufficient even if there is no audit of the taxpayer or the Commissioner fails to follow applicable procedural rules;[5] (2) is not invalidated if the Commissioner refuses the taxpayer's request to have an Appeals conference;[6] (3) is valid even though the Commissioner lacked information about the taxpayer because the taxpayer did not cooperate with the Commissioner's agents during the audit stage;[7] (4) is valid where issued to a partner based on an ongoing partnership audit;[8] and (5) is valid where the taxpayers questioned the Commissioner's conduct or procedures.[9]

---

[5] *Montgomery v. Commissioner,* 65 T.C. 511, 522 (1975); *Muller v. Commissioner,* T.C. Memo. 1989-332; *Ballard v. Commissioner,* T.C. Memo. 1987-471.

[6] *Rosenberg v. Commissioner,* 450 F.2d 529, 533 (10th Cir. 1971), affg. T.C. Memo. 1970-201; *Luhring v. Glotzbach,* 304 F.2d 560, 564-565 (4th Cir. 1962).

[7] *Pfluger v. Commissioner,* 840 F.2d 1379, 1382-1383 (7th Cir. 1988), affg. T.C. Memo. 1986-78; *Birth v. Commissioner,* 92 T.C. 769 (1989); *Egan v. Commissioner,* 91 T.C. 705, 713 (1988); *Roberts v. Commissioner,* 62 T.C. 834, 836 (1974); *Baeslack v. Commissioner,* T.C. Memo. 1988-375, affd. without published opinion 875 F.2d 309 (3d Cir. 1989).

[8] *Chaum v. Commissioner,* 69 T.C. 156, 160-161 (1977).

[9] *Capitol Fed. Sav. & Loan Association v. Commissioner,* 96 T.C. 204, 214 (1991); *Greenberg's Express, Inc. v. Commissioner,* 62 T.C. 324, 327 (1974); *Human Engineering Inst. v. Commissioner,* 61 T.C. 61, 66 (1973); *Cataldo v. Commissioner,* 60 T.C. 522 (1973), affd. per curiam 499 F.2d 550 (2d Cir. 1974); *Suarez v. Commissioner,* 58 T.C. 792, 813 (1972); (Court reviewed) (notice of deficiency valid where respondent's determination was based on illegally seized evidence); *Production House Ltd. v. Commissioner,* T.C. Memo. 1992-304.

Respondent's reliance on these cases is unjustified because the standard for deciding if a notice of deficiency is valid is different from the standard for deciding if the position of the United States is substantially justified. For a position to be substantially justified for purposes of a motion for litigation costs, it must have a reasonable basis in both fact and law. *Pierce v. Underwood,* 487 U.S. at 564-565. In contrast, there is no requirement that a notice of deficiency have a reasonable basis in both fact and law. Section 6212(a) provides in part that "If the Secretary determines that there is a deficiency in respect of any tax imposed * * * he is authorized to send notice of such deficiency". The notice must advise the taxpayer that the Commissioner has determined a deficiency for a particular year and must specify the amount of the deficiency or give information necessary to compute the deficiency. *Portillo v. Commissioner,* 932 F.2d 1128, 1132 (5th Cir. 1991), affg. in part and revg. in part T.C. Memo. 1990-68;[10] *Donley v. Commissioner,* 791 F.2d 383, 384 (5th Cir. 1986); *Benzvi v. Commissioner,* 787 F.2d 1541, 1542 (11th Cir. 1986); *Foster v. Commissioner,* 80 T.C. 34, 229-230 (1983), affd. in part and vacated in part 756 F.2d 1430 (9th Cir. 1985). A determination must be thoughtful and considered. *Couzens v. Commissioner,* 11 B.T.A. 1040, 1159-1160 (1928). However, a notice of deficiency need not state the basis for the determination, *Barnes v. Commissioner,* 408 F.2d 65, 68 (7th Cir. 1969),[11] or explain how deficiencies were determined. *Scar v. Commissioner,* 814 F.2d 1363, 1367 (9th Cir. 1987), revg. 81 T.C. 855 (1983); *Commissioner v. Stewart,* 186 F.2d 239, 242 (6th Cir. 1951), revg. a Memorandum Opinion of this Court dated Dec. 19, 1949; *Campbell v. Commissioner,* 90 T.C. 110, 115 (1988). Respondent cites no authority and we are aware of none holding that a notice of deficiency must have a reasonable basis in both fact and law.

[10] Attorney's fees were subsequently awarded to the taxpayer in *Portillo v. Commissioner,* 998 F.2d 27 (5th Cir. 1993), affg. in part and revg. in part T.C. Memo. 1992-99. The Court of Appeals held that the Commissioner had an insufficient factual basis and so did not have a reasonable basis in fact and law. Here, there was no factual basis at all.

[11] As a result of enactment of the Taxpayer Bill of Rights in 1988, specified notices of deficiency mailed on or after Jan. 1, 1990, "shall describe the basis for, and identify the amounts (if any) of, the tax due, interest, additional amounts, additions to tax, and assessable penalties included in such notice." Sec. 7522; Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, sec. 6233(a), 102 Stat. 3735. That provision took effect after the notice of deficiency here was issued.

By relying on cases upholding the validity of notices of deficiency, respondent in effect argues that if the notice of deficiency is valid, then the position taken therein is substantially justified. We disagree. The fact that the Commissioner has the right to maintain a position does not bar a taxpayer from receiving an award for litigation costs if the position is unreasonable. *Estate of Perry v. Commissioner,* 931 F.2d 1044, 1046 (5th Cir. 1991); *Keasler v. United States,* 766 F.2d 1227, 1234-1238 (8th Cir. 1985).

Respondent points out that District Counsel's function in prereviewing a notice of deficiency is to pass on its legal sufficiency, not to perform an audit; and argues that counsel's only choice was to approve the notice of deficiency because of lack of time. Respondent argues that this necessity to act is a basis in fact and law for the act. We disagree. We are aware of no authority for the proposition that running out of time constitutes a reasonable basis in fact and law for a position; on the contrary, a reasonable basis in fact and law requires that the Government have substantial evidence for the position. *Pierce v. Underwood,* 487 U.S. 552, 564-565 (1988). Here respondent made no effort to contact petitioner before taking the position at issue, and surely did not diligently investigate whether the recipient of a notice of deficiency is liable for tax. Litigation costs have been awarded where the Commissioner similarly failed to act. *United States v. Estridge,* 797 F.2d 1454 (8th Cir. 1986).[12] Thus, we reject respondent's contention that lack of time provided substantial justification.

---

[12] The underlying case in *United States v. Estridge,* 797 F.2d 1454 (8th Cir. 1986), involved responsible officer liability under sec. 6672. The *Estridge* opinion does not suggest that there is a different standard for applying the substantially justified standard in those cases than otherwise applies under sec. 7430. The circumstances in *Estridge* may be compared to the situation where the Commissioner issues notices of deficiency to one taxpayer for alternate years because of uncertainty about the proper year to report an item, or to closely related entities because of uncertainty about which entity is subject to tax. Compare *Dixson Intl. Serv. Corp. v. Commissioner,* 94 T.C. 708 (1990) (motion for litigation costs denied; alternative positions held reasonable) with *Cassuto v. Commissioner,* 93 T.C. 256, 262-265 (1989), affd. in part and revd. in part on other grounds 936 F.2d 736 (2d Cir. 1991) (motion for litigation costs granted; inconsistent position which had no chance of success held unreasonable).

d. *Whether Respondent's Position Is Substantially Justified Is Not Determined by Events Occurring After Respondent Took the Position*

Respondent argues that the position of the United States is substantially justified because of events occurring after that position was taken, that is, after the notice of deficiency was issued. For example, respondent argues that petitioner: (1) Could have contacted respondent after receiving the notice of deficiency to present substantiation; (2) took no interest in this case until forced by an impending Court calendar; and (3) took nearly 5 years after receiving the notice of deficiency to resolve the case. We do not consider events occurring after respondent's position was adopted in deciding if the position was substantially justified.

Respondent argues that there was no evidence petitioner would have cooperated before the notice of deficiency was issued. However, respondent cites no basis for believing, as of July 1986, that petitioner would not have cooperated. In fact, the one time respondent sought petitioner's cooperation, that is, to sign the Forms 872-A to extend the time to assess tax, petitioner readily cooperated. Warren worked for petitioner, and petitioner had control of his books and records until after July 1986. We believe the IRS could have easily examined petitioner's books any time before July 1986 when petitioner's records were in good order. We think an examination then would have been easier for both parties than the process respondent initiated after petitioner lost control of his records because of the bankruptcy and no longer employed Warren.

Respondent contends that petitioner could have resolved this case without the assistance of counsel or an accountant. We believe respondent oversimplifies the task of settling this case, which involved more than $7 million in tax and interest by the time set for trial, and ignores the fact that most of the delay was the result of the staying of our jurisdiction by petitioner's bankruptcy and our decision to grant continuances. Our jurisdiction was stayed by a bankruptcy proceeding from November 12, 1986, to April 29, 1988. We granted petitioner's December 8, 1988, and May 15, 1989, continuance motions and denied respondent's motion to dismiss for lack of prosecution. In addition, respondent later agreed to

delay settlement of the case if petitioner retained White as counsel. We do not fault petitioner for not resolving the case during the times the stay was in effect and approved petitioner's continuance motions. We recognize that on one occasion in 1989 we faulted petitioner for failing to comply with our order to list issues in dispute in the case. However, this does not overcome the fact that on balance, the time spent to resolve the case after the notice of deficiency was issued was reasonable.

Respondent argues that there was nothing in the petition that showed the need for further investigation. Respondent points out that the petition does not allege the existence of records, or complain about respondent's agents not calling him. Respondent's argument misses the point because the parties agree that the issue is whether respondent's position in the July 1, 1986, notice of deficiency was substantially justified; respondent has not given any reason to convince us that the petition, filed September 29, 1986, has any bearing on that.

### e. *Prior Cases Deciding Motions for Litigation Costs*

Respondent and petitioner each cite several cases in which we decided motions for litigation costs under section 7430. We will next discuss several of these cases. First, however, we note that in all of them, unlike the instant case, the Commissioner had or tried to get some information about the taxpayer on which the position of the United States was based. Thus, none of these cases addresses the issue we decide here: whether the Commissioner's position is substantially justified when it is not based on any information about the taxpayer and where the Commissioner made no attempt to obtain information about the case.

Both parties cite *Sher v. Commissioner,* 861 F.2d 131 (5th Cir. 1988), affg. 89 T.C. 79 (1987), which denied the taxpayers' motion for litigation costs. In *Sher,* the Commissioner determined that the taxpayers failed to report $1,325 in dividend income from A.G. Edwards and Sons. In their petition, the Shers did not deny that they received the dividends, even though they had the burden of proof. Rule 142(a); *Sher v. Commissioner, supra* at 135. District Counsel prepared the answer, which was the position of the United States for purposes of the motion for litigation costs. The Court of Appeals

for the Fifth Circuit noted that the position in the answer was based on the following items in the administrative file: (1) A letter from A.G. Edwards which stated that it had paid $1,325 in dividends to the taxpayers; (2) a letter from the taxpayers and A.G. Edwards stating that the taxpayers had received interest income of $775 from A.G. Edwards; and (3) an underreporter transcript. *Sher v. Commissioner, supra* at 135. Later, it became clear that the A.G. Edwards letter was wrong. The Court concluded that the position taken in the answer was substantially justified. *Sher* does not support respondent's position because in *Sher* the position of the United States was based on apparently credible third party information; whereas in the instant case, the position of the United States was not based on any information. In fact, dicta in *Sher* supports petitioner's view. The Court of Appeals said:

Although we conclude that the position of the IRS in answering the Shers' petition was substantially justified, we recognize that under different facts, the answer filed by the IRS would be inadequate without further investigation. Reliance on IRS files alone would not have been sufficient if the petition and the documents in the file demonstrated the need for further investigation. [*Id.*]

In the instant case, reliance on IRS files alone is surely not sufficient and further investigation was appropriate because: (1) Respondent had no information to suggest there were any problems with petitioner's returns; (2) respondent had decided not to contact petitioner to seek any information; and (3) the District Counsel attorney who approved the position of the United States at issue here was previously familiar with petitioner's returns for the years in issue.

Respondent cites *DeVenney v. Commissioner*, 85 T.C. 927, 933 (1985), in which we denied the taxpayer's motion for litigation costs under section 7430. In *DeVenney*, the Commissioner's determination of the taxpayer's income was based on the sources and applications of funds method. *Id.* at 930. In *DeVenney*, the position tested for reasonableness was in the Commissioner's answer. There was an Appeals conference, unlike in the instant case. The taxpayer surprised the Commissioner with a list of 23 previously unidentified witnesses 2 weeks before trial and prevailed at trial because of their testimony. *Id.* at 932. The Court said

that the Commissioner could not be expected to investigate these leads. *Id.* at 933. Respondent argues that *DeVenney* supports the proposition that the Commissioner's position has a basis in fact as long as the taxpayer has not provided evidence substantiating his position. We disagree that *DeVenney* is to be read so broadly because, in light of the fact that the Commissioner applied the sources and applications of funds method before adopting the position tested for reasonableness, it is very likely that the Commissioner knew something about the case before that time. Thus, *DeVenney* does not stand for the proposition that the Commissioner reasonably adopted a position based on having no information about a taxpayer.

Both parties cite *Don Casey Co. v. Commissioner,* 87 T.C. 847 (1986). In *Don Casey Co.,* we awarded litigation costs to the taxpayer after we rejected the Commissioner's determination that the taxpayer was liable for the addition to tax for fraud under section 6653(b). The IRS instituted a criminal investigation of the taxpayer. The taxpayer's attorney told Government counsel that the transaction at issue had been recorded in the general ledger and reported as income, and produced excerpts from the general ledger to support his claim. *Id.* at 849. An IRS special agent was later told of the events at that meeting. However, the special agent made no further investigation. *Id.* at 849-850. The Commissioner issued a notice of deficiency. The taxpayer's attorney later presented the general ledger at an Appeals conference. *Id.* at 851. IRS counsel considered settling the case but ultimately presented it to the Court to decide if the evidence was trustworthy. *Id.* at 855. We concluded that the position of the United States was not reasonable. *Don Casey Co.* does not support respondent's view that a position taken without an investigation has a reasonable basis in both fact and law; in fact it supports the opposite view.

Respondent relies on *Sokol v. Commissioner,* 92 T.C. 760 (1989). In *Sokol,* we denied the taxpayers' claim for an award of litigation costs and held that the Commissioner's position in the answer was reasonable. The taxpayers' bank had sent Forms 1099-INT to the IRS, and the Commissioner determined a deficiency based on them. *Id.* at 765. The Forms 1099-INT were in error. The Commissioner's counsel offered to concede the case in the answer, and prepared a decision document for

the taxpayers to sign. *Id.* at 767. The taxpayers refused to sign unless the Commissioner agreed to pay litigation costs. We held that in *Sokol* the position of the United States in the answer was reasonable because the Commissioner offered to concede the case. Respondent points out that in *Sokol* we said that the Commissioner's actions were reasonable in light of what the Commissioner knew when the notice of deficiency was mailed. Respondent's reliance on that language is not persuasive because the Commissioner's position tested for reasonableness for purposes of the litigation costs motion in *Sokol* was contained in the answer, not in the notice of deficiency, as in the instant case. *Estate of Johnson v. Commissioner,* 985 F.2d 1315, 1319 (5th Cir. 1993).

Respondent cites *Harrison v. Commissioner,* 854 F.2d 263 (7th Cir. 1988), affg. T.C. Memo. 1987-52. In *Harrison,* the taxpayers sought an award of litigation costs under section 7430. The Commissioner had examined 3 years of a partnership's returns. The IRS notified the taxpayers that as a result of their holding an interest in the partnership, their personal returns were under examination. *Id.* at 264. Before the partnership examination was finished, the IRS asked the taxpayers to consent to extend the period to assess tax. The taxpayers signed and mailed a consent, but the IRS did not receive it. *Id.* The Commissioner then determined deficiencies pertaining only to partnership losses. The taxpayers filed a petition with this Court. Later the Commissioner completed the partnership examination and concluded that the partnership return was correct as filed. Within 2 months the Commissioner conceded the deficiencies in full. *Harrison* is not analogous to the instant case because in *Harrison* the Commissioner was actively investigating the taxpayers' entitlement to partnership deductions, and the partnership audit provided a reasonable basis for the notice of deficiency sent to the taxpayers, unlike the instant case where petitioner has shown that respondent had no comparable information. Respondent points out that, in *Harrison,* the U.S. Court of Appeals for the Seventh Circuit said: "the government acted reasonably in attempting to preserve its right to conduct a full investigation before making a final determination on whether it should allow the Harrisons' deduction", and "Because the IRS did not receive the Harrisons' consent to an extension of time, its action in finding

a deficiency in order to toll the statute of limitations was reasonable." *Id.* at 266-267. Respondent's reliance on this language is misplaced because in the instant case, petitioner extended the period of limitations for 3 years and respondent did not use the additional time to investigate petitioner's claimed deductions or conduct an audit. Thus, respondent's claim of acting under time constraints is inapplicable here.

In *Wasie v. Commissioner,* 86 T.C. 962, 970-971 (1986), we denied the taxpayer's motion for litigation costs after finding that the Commissioner's position in the answer was reasonable. The taxpayer refused to extend the time to assess tax. The Commissioner then issued a notice of deficiency for excise taxes for self-dealing based on the taxpayer's participation, as a foundation manager, in an act of self-dealing between the foundation and another entity. *Id.* at 964. Legislation which retroactively obviated the Commissioner's determination was enacted after the Commissioner issued the notice and before the taxpayer filed her petition. The Commissioner conceded the excise tax issue in the answer. The position of the United States for purposes of the motion for litigation costs was in the answer, unlike in the instant case. The Tax Court found that the position in the answer was reasonable. Respondent relies on the fact that we said the Commissioner had acted reasonably in issuing a notice of deficiency where the taxpayer had refused to extend the period of limitations. *Id.* at 969. *Wasie* is distinguishable from the instant case because in *Wasie:* (1) The Commissioner's position was based on the taxpayer's self-dealing, but here there was no basis for respondent's position; and (2) in the answer, which was the position of the United States for purposes of the litigation costs motion, the Commissioner conceded based on the statutory change made after issuance of the notice of deficiency. In the circumstances of *Wasie* a concession was indisputably reasonable.

In *McDaniel v. Commissioner,* T.C. Memo. 1993-148, the Commissioner discovered through the information matching system that the taxpayer had not reported dividend income and the proceeds from a land sale and had overstated the amount of his deductible interest. The Commissioner requested explanatory information and, when the taxpayer failed to respond, issued a notice of deficiency. After a several-month delay by the taxpayer, the taxpayer substan-

tiated that he had reported the income in question, and that he had paid the mortgage interest in the amounts claimed. *McDaniel* is similar to the instant case in that the position tested for reasonableness is in the notice of deficiency. In *McDaniel,* we held that the Commissioner's position was not unreasonable because the Commissioner had information regarding the taxpayer's return and tried to contact the taxpayer in an attempt to resolve the dispute before sending the deficiency notice. Those facts are in clear contrast to the instant case.

### f. *Penalty, Interest, and Additions to Tax for Negligence*

Petitioner contends that respondent's determination that (1) Additions to tax for negligence apply; and (2) underpayments attributable to tax motivated transactions apply to the entire deficiency was not substantially justified. Respondent acknowledged that the assertion of additional interest pursuant to section 6621(d) for the entire deficiency was in error. In light of our analysis above, we need not separately discuss this issue.

### g. *Conclusion: Respondent's Position Was Not Substantially Justified*

Based on the foregoing, we conclude that respondent's position for purposes of the motion for litigation costs was not substantially justified, i.e., did not have a reasonable basis in both fact and law, because respondent had no information about the case and had made no attempt to obtain information about the case before adopting the position at issue (in this case, the notice of deficiency).

### 3. *Net Worth Requirement*

#### a. *General*

To be entitled to an award of litigation costs, petitioner must show either that his net worth did not exceed $2 million when the civil action was filed, or that he was the owner of an unincorporated business the net worth of which did not exceed $7 million and which had no more than 500 employees when the civil action was filed. Sec. 7430(c)(4)(A)(iii); 28 U.S.C. sec. 2412(d)(1)(B). Petitioner had substantial negative net worth on September 29, 1986, when he filed the petition

in this case. Thus, petitioner meets the net worth requirement.

Respondent argues that petitioner has not proven by competent evidence that he meets the net worth limit. Respondent points out that petitioner did not produce a certified statement of his net worth, and contends that this is because "no one would certify to the petitioner's net worth". Respondent argues that filing a bankruptcy petition does not prove a negative net worth, and that a person with a positive net worth may file a bankruptcy petition.

Petitioner contends his net worth was as much as negative $100 million in the fall of 1986 because the liabilities attributable to his office buildings far exceeded their value, which was devastated by the collapse of the Houston economy. Petitioner's Arena I and II office buildings, valued at $50 million and $45 million on petitioner's September 1985 balance sheet, were sold at a foreclosure sale in 1987 for about $15 million each. We infer that on September 29, 1986, those buildings were worth far less than the amounts shown on the 1985 balance sheet because they were sold in 1987 for about $65 million less than the value shown on the 1985 balance sheet. According to Compton, petitioner was relieved of at least a $60 million debt attributable to the buildings when they were sold; however, that occurred after the petition was filed on September 29, 1986.

Respondent questions to what extent the state of the Houston economy reduced the value of petitioner's buildings, but provides no evidence for that view as persuasive as the 1987 sales prices for the buildings.

b. *Whether Findings of the Bankruptcy Court Are Admissible To Show the Truth of Their Contents in This Case*

At trial respondent offered into evidence three Bankruptcy Court documents which made detailed findings of fact relevant to petitioner's bankruptcy cases: An order dated October 31, 1986, converting petitioner's bankruptcy case to chapter 7, and memorandum opinions of the bankruptcy court entered June 30, 1989, and October 18, 1990. Respondent moved that these documents be admitted as evidence of the truth of their findings of fact for purposes of this case. At trial we admitted the bankruptcy order for the limited purpose of showing that the order had been issued. Respondent

concedes that the documents are hearsay if admitted to prove the facts stated therein, but contends they are admissible under the residual hearsay exception. Fed. R. Evid. 803(24).

Rule 803(24) of the Federal Rules of Evidence (rule 803(24)) is to be used "very rarely, and only in exceptional circumstances." *United States v. Heyward,* 729 F.2d 297, 300 (4th Cir. 1984); *Goldsmith v. Commissioner,* 86 T.C. 1134, 1140 (1986); S. Rept. 93-1277, at 18-20 (1974). Rule 803(24) applies only if: (1) The statement has guarantees of trustworthiness equivalent to those provided in other hearsay exceptions; (2) the statement is offered as evidence of a material fact; (3) the proponent of the statement gives fair notice to the other party that the statement will be offered; (4) the material is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (5) admission serves the interests of justice. Rule 803(24).

Respondent contends that the opinions have a high guarantee of trustworthiness, respondent could not have procured the evidence relied on by the bankruptcy court through reasonable efforts, and the interests of justice are served by admitting the opinions into evidence. Respondent neither claimed to have made any effort to obtain nonhearsay evidence to prove these matters nor explained whether nonhearsay evidence was reasonably available. Compton and petitioner appeared to be the two most important witnesses at the bankruptcy trial. Both testified at the hearing on petitioner's motion for litigation costs and could have been asked any question about petitioner's net worth. Prior testimony of a declarant is inadmissible under rule 803(24) if the declarant was available to testify at the trial, because live testimony is better evidence. *Parsons v. Honeywell, Inc.,* 929 F.2d 901, 907-908 (2d Cir. 1991); *United States v. Mathis,* 559 F.2d 294, 299 (5th Cir. 1977). Rule 803(24) does not allow use of hearsay just because it is more convenient. Here, live testimony from Compton and petitioner was readily available. We conclude that respondent's exhibits are not admissible to prove the truth of factual findings therein because the material was not more probative than readily available live testimony, and the interests of justice are not served by our use of a hearsay source in lieu of available live

testimony. In addition, as discussed next, the findings of fact bear little if at all on any facts material to this case.

### c. *Bankruptcy Court Findings Do Not Show Petitioner Had Net Worth Above $2 Million*

Petitioner argues that even if the findings of fact from the bankruptcy opinions case were admissible, they would not show that he had net worth of $2 million or more when he filed the petition. We agree. The bankruptcy court was not considering petitioner's net worth and made no factual findings about his net worth. The findings contribute little or nothing relevant to deciding his net worth. The findings were included in an opinion of the bankruptcy court denying discharge of petitioner's debts in bankruptcy. According to the findings, petitioner violated numerous requirements for discharge of indebtedness in bankruptcy. Those documents state, for example, that petitioner transferred to third parties various assets (e.g., several cars, two to three condominium units, office equipment) without adequate consideration mostly before September 29, 1986; that petitioner failed to comply with bankruptcy reporting requirements or to pay the administration fee; that petitioner has suffered large cash losses since confirmation of his chapter 11 plan; and that petitioner sold some building materials, consumed tenant's security deposits, and failed to remit State real estate tax or Federal withholding taxes on employees' salaries. These facts, while relevant to the bankruptcy proceeding, do not speak to petitioner's net worth on September 29, 1986. Further, these facts, even if admissible under rule 803(24), do not begin to overcome petitioner's showing that he had enormous negative net worth on September 29, 1986, due to the fact that he remained liable for debt on buildings which had declined precipitously in value. Therefore, we conclude that petitioner meets the net worth limit of section 7430(c)(4)(A)(iii) and 28 U.S.C. section 2412(d)(2)(B).

### 4. *Whether Petitioner Unreasonably Protracted Any Portion of the Proceeding*

Petitioner's litigation costs are not reimbursable "with respect to any portion of the * * * proceeding" which petitioner "unreasonably protracted". Sec. 7430(b)(4).

Respondent contends that petitioner unreasonably protracted the proceedings. Respondent contends that petitioner waited nearly 5 years to take any action on his case. Respondent points out that petitioner received two continuances and did not present evidence to respondent until February 1991, that petitioner did not submit trial memoranda for this case for trial calendars in 1988 and 1990, and that his attorney did not respond to respondent's requests for action until shortly before the next session of the Court for which the case was calendared. Respondent argues that petitioner's bankruptcy, his failure to have counsel, and his lack of accounting ability did not prevent him from resolving the case; his unwillingness to deal with the problem did.

To decide this issue, we must decide: (1) Whether petitioner unreasonably protracted the proceedings; and if so, (2) during what portion of the proceedings this occurred; and (3) what amount of petitioner's claimed litigation expenses are attributable to that portion of the proceedings. Sec. 7430(b)(4). We need not decide if petitioner unreasonably protracted the proceedings during times that he had no litigation expenses.

Petitioner first claims litigation costs for January 1990. In January, petitioner and respondent's counsel tentatively agreed to a settlement of the case. On February 12, 1990, petitioner filed a motion proposing that the case be settled on that basis unless petitioner's counsel entered an appearance by June 1, 1990. Respondent agreed to that procedure. We find there was no unreasonable protraction from January to June 1, 1990.

On September 21, 1990, the Court calendared the case for trial at the session beginning February 25, 1991. Petitioner rehired his former accountant (Warren) in late 1990, and he and his counsel prepared petitioner's substantiation for presentation to the IRS. The case was settled at our trial session beginning February 25, 1991.

Respondent's counsel wrote White three times between June 1990 and January 1991, and called him once. White did not respond to respondent's counsel until January 1991, when Warren began work on the case. Respondent cites *Polyco, Inc. v. Commissioner,* 91 T.C. 963, 967-968 (1988), in which the taxpayer declined to take any action to resolve his case until the eve of trial. In *Polyco,* we characterized the

entire proceeding as unreasonably protracted. That is not the situation here; for example, in this case there was no unreasonable protraction from November 12, 1986, to April 29, 1988, while our jurisdiction was stayed because of petitioner's bankruptcy proceeding, or during the years we continued the case to enable petitioner to retain legal and accounting assistance. As soon as Warren was retained in December 1990, there was a reasonably expeditious settlement of the case. Under these circumstances, we conclude that petitioner did not unreasonably protract resolution of the case.

## 5. *Applicable Hourly Rate for Attorney's Fees*

The next issue for decision is what hourly rate applies to attorney's fees in this case. Section 7430(c)(1)(B)(iii) provides that "reasonable litigation costs" include:

reasonable fees paid or incurred for the services of attorneys in connection with the court proceeding, except that such fees shall not be in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for such proceeding, justifies a higher rate.

### a. *Whether a Special Factor Is Present*

We next consider whether a special factor is present to warrant payment of attorney's fees at a rate higher than $75, adjusted for increases in the cost of living.

Petitioner argues that special factors are present. Citing *Bode v. United States*, 919 F.2d 1044, 1047 (5th Cir. 1990), petitioner argues that only attorneys intimately familiar with the workings of the IRS and this Court could have resolved this case so successfully. Petitioner's expert, Edward D. Urquhart (Urquhart), testified that counsel with the qualifications needed here could not be hired for less than $225 per hour in the Houston area and that the fees charged by each of petitioner's lawyers were reasonable. Finally, petitioner argues that the Court of Appeals for the Fifth Circuit held that exceptional results can be a special factor under section 7430, *id.* at 1051-1052, and the fact that petitioner's counsel obtained a complete concession from respondent is an exceptional result warranting an award of fees above the $75 hourly rate.

To preserve the intended effectiveness of the $75 cap, any "special factor" should not be of broad and general application. *Pierce v. Underwood,* 487 U.S. 552, 573 (1988). It is not a special factor if hourly rates for all lawyers in the relevant city or area exceed $75. *Id.* at 571-572. In *Bode v. United States, supra* at 1051, the Court of Appeals found that the taxpayers were entitled to an award in excess of $75 per hour because the taxpayers

could not have obtained qualified attorneys who could handle the complex nature of the underlying merits *in this case*—attorneys with a special expertise in tax law—for substantially less than the hourly rate of $150 awarded by the district court, and certainly not for $75 per hour.

The statutory exception for the limited availability of qualified attorneys refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question, as opposed to an extraordinary level of general lawyerly knowledge and ability useful in all litigation. *Pierce v. Underwood, supra* at 572. General expertise in tax law in itself is not a special factor warranting a fee award in excess of $75 per hour under section 7430. *Huffman v. Commissioner,* 978 F.2d 1139, 1150 (9th Cir. 1992), affg. in part and revg. in part T.C. Memo. 1991-144; *Bode v. United States, supra* at 1050-1051. However, under *Pierce v. Underwood, supra* at 572, depending on the facts and circumstances of the case, we may find that a tax attorney had a special skill and expertise needful for the litigation in question.

### b. *Settlement of the Underlying Case*

Here we believe that petitioner's attorneys' work to settle the case required use of a tax attorney and required "an extraordinary level of general lawyerly knowledge," *id.* at 572, but did not require a distinctive knowledge or specialized skill within the general field of taxation. We think settlement of this case was more difficult than respondent suggests, but does not require the "special skills" requisite to set aside the $75 cap.

Generally speaking, "the results obtained" are not a special factor justifying setting aside the statutory cap on attorney's fees. *Id.* at 573. However, the U.S. Court of Appeals for the Fifth Circuit has left open whether we may consider excep-

tional results based on an appropriate analysis from the trial court. *Bode v. United States, supra* at 1052.

In *Bode,* the Court of Appeals said:

To the extent that exceptional results can be a special factor in a section 7430 case, the district court could find, without committing reversible error, that the results obtained in this case meet that definition. Not only did the Taxpayer's attorneys achieve a total victory on the merits in the trial court, they also were able to convince the district court that the Service's position was "not substantially justified." If on remand, the district court does find that the results obtained in the case were exceptional, and that the services of * * * [one of taxpayer's tax counsel] were instrumental and necessary in obtaining those results, the court in its discretion may depart from the statutory cap and articulate its reasons for doing so * * *. [*Id.* at 1051-1052.]

We note at the outset that the results here were exceptional, as in *Bode,* because respondent conceded there was no deficiency for the years at issue and petitioner's counsel has shown respondent's position was not substantially justified. See *id.* However, to establish exceptional results as a special factor, petitioner must show the attorney was instrumental and necessary to obtain the exceptional results. *Id.* at 1052. In the instant case we believe Warren (the accountant), and not the attorneys, played the most significant role in obtaining the settlement because he regularly participated in the meetings leading to the settlement. White attended the meetings only occasionally. Supporting this view is the fact that White did next to nothing to resolve this case after reentering in June of 1990; instead, the settlement discussions awaited the rehiring of Warren in December 1990. Absent a showing that Whites's services were instrumental and necessary in obtaining the settlement, *id.* at 1052, we do not consider extraordinary results as a basis for finding a special factor was present in this case.

c. *Adjustment of $75 Limit for Increases in the Cost of Living From 1986*

We must also decide the hourly limit on reimbursement for the attorneys who worked on the case. The parties agree that the appropriate base year for calculating cost of living increases is 1986. We have held that 1981 is the appropriate base year. *Bayer v. Commissioner,* 98 T.C. 19 (1992); *Cassuto v. Commissioner,* 93 T.C. 256, 269 (1989), affd. in part and

revd. in part 936 F.2d 736 (2d Cir. 1991). However, the Court of Appeals for the Fifth Circuit, to which this case is appealable, has held that 1986 is the appropriate base year for cost of living increases under section 7430. *Heasley v. Commissioner,* 967 F.2d 116, 125 (5th Cir. 1992), affg. in part and revg. in part T.C. Memo. 1991-189. We apply that holding here. *Golsen v. Commissioner,* 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971).

We use the Consumer Price Index (CPI) for all urban consumers to adjust the $75 hourly limit for increases in the cost of living. *Cassuto v. Commissioner, supra* at 273; *Bayer v. Commissioner,* T.C. Memo. 1991-282, modified 98 T.C. 19 (1992). The hours billed by petitioner's attorneys for which petitioner is entitled to be reimbursed are for work performed between January 1990 and January 1992. The adjusted hourly limits for these months are:

|  | Percentage CPI increases since 1986 | Hourly rate |
|---|---|---|
| January 1991 | 22.8 | $92.11 |
| February 1991 | 23.0 | 92.24 |
| March 1991 | 23.2 | 92.38 |
| April 1991 | 23.4 | 92.52 |
| November 1991 | 25.7 | 94.30 |
| January 1992 | 26.0 | 94.50 |

### 6. *Amount of Reasonable Litigation Costs*

We next decide whether the amount of petitioner's litigation costs was reasonable. Reasonable litigation costs include reasonable fees paid or incurred for the services of attorneys in connection with the court proceeding. Sec. 7430(c)(1). Petitioner bears the burden of proving the reasonableness of these costs. Rule 232(e); *Bayer v. Commissioner, supra.*

Petitioner requests reimbursement for attorney's fees of $92,111.25 (505.35 hours of attorney time at $130 to $250 per hour), accountant and expert witness fees of $27,160, paralegal fees of $4,935.50, plus miscellaneous costs of $2,440.77.

Respondent argues that some of petitioner's expenses were not to eliminate taxable income but to agree on the carryback of net operating losses from the years in issue to petitioner's 1976 and 1977 years.

Based on our review of the billing charges of petitioner's counsel, we summarize the attorney time as follows:

| *Purpose* | *Hours* |
|---|---:|
| Settlement of the case: | |
| Various telephone conversations, meetings with petitioner, IRS, accountant, including interoffice conferences ........................................................................ | 58.60 |
| Discussion and preparation of agreed settlement and stipulation ................................................................... | [1] 165.00 |
| Court appearances ............................................................... | 5.00 |
| Legal research and preparation of pleadings ...................... | 58.25 |
| Preparation for trial of the case ......................................... | 63.50 |
| Services provided (10/16/91-11/5/91) .................................. | 102.25 |
| | |
| Motion for litigation costs: | |
| Various phone conversations, meetings with petitioner, IRS, including interoffice conferences ............................. | 21.50 |
| Legal research (etc.) ............................................................ | 53.50 |
| Discovery, preparation for and appearances at hearing on the motion for litigation costs ..................................... | 65.50 |
| Services provided (1/17/92-1/22/92) ..................................... | 42.00 |

[1] This represents 165 accountant hours of Warren.

Petitioner's accountant billed 165 hours for preparing the stipulation and settlement of issues. We find this to be reasonable. Petitioner's counsel billed 121.75 hours for legal research and preparation for the trial on the underlying merits of the case. We find 121.75 hours to be excessive, and 75 hours to be reasonable. See *Cassuto v. Commissioner, supra* at 270. Petitioner's counsel billed 58.60 hours for phone conferences and meetings with petitioner, respondent, and the accountant during the settlement of the case. We find 40 hours to be reasonable. We also find 5 hours for Court appearances to be reasonable. Petitioner's counsel billed 21.50 hours for telephone conferences and meetings with petitioner and respondent, 53.50 hours for legal research and writing of briefs in support of the motion for litigation costs, and 65.50 hours for preparing and appearing at the hearing on the motion for litigation costs. We find these amounts to be reasonable. Petitioner's counsel billed an additional 144.25 hours but presented no detailed explanation of the services provided. We do not award fees for these hours. *Bode v. United States,* 919 F.2d at 1047-1048.

Petitioner seeks reimbursement of $27,160 for accountant and expert witness fees and $2,440.77 for other costs. We find that these amounts are reasonable. Petitioner also seeks reimbursement of $4,935.50 for paralegal fees, with hourly rates ranging from $50 to $170. This Court has awarded fees for paralegals and law clerks. *Malamed v. Commissioner,* T.C. Memo. 1993-1; see *Jean v. Nelson,* 863 F.2d 759, 778 (11th Cir. 1988), affd. 496 U.S. 154 (1990); *Kopunec v. Nelson,* 801 F.2d 1226, 1229 (10th Cir. 1986). The record upon which the motion for attorney's fees was submitted did not differentiate either the qualifications of the service provider or the nature of services rendered sufficiently to justify applying different rates. *Kopunec v. Nelson, supra.* Accordingly, in our discretion, we apply a single hourly rate of $50 for the paralegals in this case. This is not inconsistent with the court's conclusion in *Kopunec.* There, the amounts requested ranged from $35 to $60 per hour. The court applied a single hourly rate of $25. Accordingly, we allow $1,685 ($50 times 33.7 hours) for paralegal fees.

The itemized billing shows $186 for LEXIS computer research, $1,029.25 for photocopying, $63.64 for postage, $297.64 for telephone/telecopy, $741.75 for messenger service, $77.50 for meals, $40 for certified copies, and $4.99 for mileage/parking.[13] We find these amounts to be reasonable.

Petitioner also claimed costs for secretarial, word processing, and overtime expenses. As noted in *Hirschey v. FERC,* 777 F.2d 1, 6 (D.C. Cir. 1985), overhead and secretarial costs are included in attorneys' fees and are not payable separately. See *Levy v. Commissioner,* T.C. Memo. 1992-259; *Bayer v. Commissioner, supra.* We treat word processing as general secretarial expenses.

Accordingly, we award petitioner attorney's fees in the amount of $24,362.85, paralegal fees of $1,685, accountant and expert witness fees of $27,160, and costs in the amount of $2,440.77. We also award $60 for the cost of filing the petition in this Court.

---

[13] Respondent did not contest these itemized litigation costs. Therefore, we consider these amounts conceded. *Schaefer v. Commissioner,* T.C. Memo. 1991-426.

### 7. *Petitioner's Motion for Sanctions*

Petitioner moved for sanctions under Rule 33(b) on the grounds that respondent's positions in defending against petitioner's motion for litigation costs are not grounded in fact or law, and are not made in good faith. Petitioner bears the burden of proving entitlement to relief under the motion. Rule 142(a). Rule 33(b), as modified in 1986, 85 T.C. 1125-1126, provides in pertinent part:

The signature of counsel or a party constitutes a certificate by him that he has read the pleading; that, to the best of his knowledge, information, and belief formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. * * * If a pleading is signed in violation of this Rule, the Court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including reasonable counsel's fees.

The 1986 amendment to Rule 33(b) parallels the 1983 amendment to rule 11 of the Federal Rules of Civil Procedure (rule 11); thus, in interpreting Rule 33(b) we consider authorities interpreting rule 11. *Versteeg v. Commissioner,* 91 T.C. 339, 342 (1988). The three elements of the standard of certification under Rule 33(b) and rule 11 are that the signer: (1) Has read the pleading, (2) has concluded, after a reasonable inquiry that, to the best of his knowledge, it is well grounded in fact and law (or on a good faith argument for modification of law or legal interpretation), and (3) is not acting with an improper purpose. See 5A Wright & Miller, Federal Practice and Procedure, sec. 1335, at 58-59 (1990). Sovereign immunity is not a bar to imposition of rule 11 sanctions against the United States. *Adamson v. Bowen,* 855 F.2d 668, 672 (10th Cir. 1988); see also *United States v. Gavilan Joint Community College Dist.,* 849 F.2d 1246 (9th Cir. 1988). Violation of the elements can trigger a rule 11 sanction. *Aetna Life Ins. Co. v. Alla Medical Serv. Inc.,* 855 F.2d 1470 (9th Cir. 1988); *Thomas v. Capital Secret Serv., Inc.,* 812 F.2d 984, 988 (5th Cir. 1987), modified on rehearing 822 F.2d 511 (5th Cir. 1987) (en banc) and 836 F.2d 866 (5th Cir. 1988) (en banc); *Zaldivar v. City of Los Angeles,* 780 F.2d

823, 831-832 (9th Cir. 1986); 5A Wright & Miller, *supra* at 58. We do not find that respondent acted with any improper purpose. *Coats v. Pierre,* 890 F.2d 728 (5th Cir. 1989); 5A Wright & Miller, *supra* at 80.

Petitioner will receive an award for litigation costs because of our granting of that motion. To the extent petitioner made the Rule 33(b) motion as an alternative to the motion for litigation costs, it is moot. To the extent he made it to obtain an award in excess of our litigation costs award, e.g., because Rule 33(b), unlike section 7430, contains no express limit on the hourly rate for attorneys, we deny it. Petitioner cites no authority for the use of Rule 33(b) or rule 11 for this purpose, nor do we think it is merited here. See *Portillo v. Commissioner,* 998 F.2d 27 (5th Cir. 1993), revg. and remanding T.C. Memo. 1992-99.

> *An appropriate order and decision will be entered.*

