T.C. Memo. 2005-8

UNITED STATES TAX COURT

DENNIS AND NANCY FLYNN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7071-03.                    Filed January 24, 2005.

Ned Leiba, for petitioners.

<u>Lorraine Y. Wu</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, <u>Judge</u>:  This case is before the Court on
petitioners' claim for administrative costs under section 7430
and Rule 231.[1]

---

[1] Unless otherwise specified, section references are to the
Internal Revenue Code as amended, and Rule references are to the
Tax Court Rules of Practice and Procedure.

Petitioners requested that respondent administratively abate the addition to tax under section 6651(a)(2) for failure to pay tax for 1993, 1995, and 1996. Respondent denied their request on January 13, 2000. The parties later settled the case, with respondent conceding the issue for 1993 and petitioners conceding 1995 and 1996. Petitioners seek $8,162.50 in administrative costs.

After concessions, the issue for decision is whether respondent's position in the administrative proceeding was substantially justified. We hold that it was.

References to petitioner are to Dennis Flynn.

### FINDINGS OF FACT

Some of the facts were stipulated and are so found.

A.  Petitioners

Petitioners were married and resided in Stockton, California, when they filed the petition. At all relevant times, petitioner was a tenured professor at the University of the Pacific in Stockton, California, and petitioner Nancy Flynn was employed as an administrator by the Tracy, California, public school system.

1.  Petitioners' Bankruptcy in 1991-92

Petitioner was a general partner in a ministorage partnership beginning in 1986. The ministorage business and petitioners filed petitions in bankruptcy and received orders

releasing them from all of their dischargeable debts under Chapter 7 of the Bankruptcy Code in 1991 and 1992.[2]

### 2. Petitioners' 1993 Income and 1993-97 Tax Returns

In 1993, petitioners had income of $105,219, including wages of $87,026 and rental and partnership income of $22,020. Their tax liability for 1993 was $14,302, and they had $5,952 withheld for Federal income tax in 1993.

Petitioners timely filed their 1993-97 returns. They did not pay tax for those years when due other than the amounts withheld. Respondent assessed the addition to tax under section 6651(a)(2) for failure to timely pay tax (late payment addition) of $1,413.66 for 1993 on November 28, 1994; $4,087.25 for 1994 on November 20, 1995; $714.12 for 1995 on April 22, 1996; $686.07 for 1996 on November 17, 1997; and $192.51 for 1997 on November 16, 1998.

### B. Respondent's Efforts To Collect Petitioners' Unpaid Tax for 1993-96

#### 1. Revenue Officer Sims's Contacts With Petitioners and Petitioners' Representative

In 1996, Revenue Officer Paul Sims (Sims) was assigned to collect income tax petitioners owed for 1993-95. Sims was later assigned to collect income tax petitioners owed for 1996 and 1997.

---

[2] The record does not indicate which debts were discharged.

In a letter dated June 10, 1996, petitioner said that petitioners had one mortgage with a balance due of $259,492.47 and monthly payments of $2,084.36 for principal and interest. Petitioner wrote that their certified public accountant and attorney had told them that foreclosure on petitioners' home would generate $61,548 of additional income tax in the year of the foreclosure. Petitioner said that their son had been diagnosed with attention deficit disorder and Tourette's syndrome, and that the benefits of the private high school attended by their son far outweighed the $350 per month tuition cost.

Petitioner attached to his June 10, 1996, letter, a letter from a realtor stating that it was highly likely that the proceeds from the sale of the home would be less than the balance due on the mortgage. Petitioner provided documents showing that utilities had cost $230.32 per month for the previous 3 months. Petitioner attached a letter from a dean of the College of the Pacific stating that petitioner was required to pay $500 per month for unreimbursed employee expenses. Petitioner also attached documents showing the balances of petitioners' retirement funds. Petitioner said that petitioners could not withdraw those funds.

On September 27, 1996, petitioners filed with respondent an Application for Taxpayer Assistance Order (Taxpayer's Application

for Relief from Hardship) in which they asked that the late payment addition for 1993-95 be abated and that a payment plan be negotiated.

For January 1997, petitioner Nancy Flynn received gross pay of $5,734.94 from the Tracy Elementary School District and $1,204.49 from the Tracy Joint Union High School. Petitioners' home was sold on April 3, 1997, due to default under a deed of trust.

Petitioner met with Sims on April 24, 1997. After that meeting, petitioners retained a new certified public accountant, Ned Leiba (Leiba).

On September 2, 1998, petitioners filed an amended return for 1994, in which petitioners reported a reduced amount of tax of $27,708. In it, petitioners reported that they did not have cancellation of indebtedness income in 1994 under section 108(a)(1)(B) because they were insolvent when a debt was canceled in January 1994. On December 21, 1998, (a) petitioners paid the late payment addition and the tax owed for 1993, 1995, and 1996, and (b) Leiba gave Sims a letter in which petitioners requested that respondent abate the late payment addition for 1993-97 and refund those amounts.

Respondent accepted petitioners' amended 1994 return as substantially correct in that respondent reduced the amount of tax due from $98,729.52 to $27,719.73. On January 4, 1999, Sims

wrote petitioners to inform them that he had recommended to his group manager that respondent abate the late payment addition for 1994. He also told petitioners that he had denied their request to abate the late payment addition for 1993 and 1995-97, in part because petitioners had not had enough tax withheld for those years.

On March 3, 1999, Leiba wrote a letter to Sims in which he argued that petitioners had reasonable cause not to pay tax for 1993, 1995, and 1996.[3] Leiba said that the taxpayers had believed that their withholding was sufficient to pay the tax due for 1993 and that they had not expected to receive income of $22,000 from petitioner's ministorage partnership in 1993.

Sims wrote a letter to Leiba on March 17, 1999, in which he said that petitioners' combined wages in 1993, 1995, and 1996 exceeded the average household income for the area. Sims denied petitioners' request to abate the late payment addition for 1993, 1995, and 1996.

2. Respondent's Appeals Office

On April 5, 1999, Leiba wrote to Sims to tell him that petitioners would appeal to respondent's Appeals Office Sims's denial of petitioners' request to abate the late payment addition for 1993, 1995, and 1996. On April 20, 1999, Leiba sent to Sims

---

[3] Petitioners allege that respondent abated the late payment addition for 1997.

a complete set of documents and correspondence that he had previously submitted to Sims. Leiba wanted the Appeals Office to have a complete set of documents to review in evaluating petitioners' request.

On May 25, 1999, Sims prepared a penalty appeal record regarding petitioners' late payment addition for 1993, 1995, and 1996. In it, he pointed out that petitioners had a substantial amount of wages in 1993 and that petitioners had an inadequate amount of withholding for 1992 and 1993.

On June 10, 1999, Appeals Officer Joe Gurnaby (Gurnaby) wrote Leiba to tell him that he had received petitioners' request to abate the late payment addition for 1993, 1995, and 1996. On October 13, 1999, Gurnaby wrote Leiba to tell him that he had reviewed petitioners' request. Gurnaby said that petitioners earned good salaries and that their withholding for 1993, 1995, and 1996 was significantly less than their tax due. Leiba faxed a letter to Gurnaby on November 24, 1999, reminding him of petitioners' bankruptcy and foreclosure and enclosing other documents that he had provided to respondent earlier.

After reviewing Leiba's November 24, 1999, letter, Gurnaby wrote Leiba to tell him that Gurnaby would recommend that petitioners' request to abate the late payment addition be denied. In that letter, Gurnaby stated his opinion that petitioners' bankruptcy and foreclosure did not establish that

petitioners could not have paid tax without undue hardship, and that respondent's records show that petitioners' wages from 1994-97 exceeded $120,000 per year.

On January 13, 2000, Gurnaby issued the notice of decision disallowing petitioners' request to abate the late payment addition for 1993, 1995, and 1996. Respondent had requested information from petitioners several times before denying their request. Respondent had requested but petitioners or their representative did not provide: (a) Petitioners' canceled checks and other bank and financial records showing how petitioners spent their income; (b) documents showing that petitioners were either unable to pay the tax or would have suffered undue hardship if they did; and (c) documents showing that services at the private school attended by their son, who had been diagnosed with attention deficit disorder and Tourette's syndrome, were not available in the public schools.

### 3. Settlement of Petitioners' Claim

On August 17, 2001, Leiba sent to Jack Estoll (Estoll), Gurnaby's manager, copies of documents petitioners had previously submitted to respondent's Appeals Office relating to their request to abate the late payment addition and claim for refund.

On September 27, 2001, at a conference attended by Leiba, Gurnaby, and Estoll, respondent offered to concede the late payment addition for 1993 if petitioners would concede the late

payment addition for 1995 and 1996.  On October 11, 2001, Leiba wrote Estoll to accept respondent's settlement offer.  On October 29, 2001, respondent's Appeals Office confirmed that respondent had agreed to abate the late payment addition for 1993.

On December 10, 2001, Leiba wrote to Charles Checchi (Checchi), respondent's area director in San Francisco, to ask him to approve petitioners' claim for refund of the late payment addition for 1995 and 1996.

C.   Administrative Costs Claim

On January 22, 2002, Leiba wrote to Checchi to request payment of petitioners' administrative costs.  On March 28, 2002, Checchi wrote Leiba to inform him that he had spoken to Estoll about the case and decided not to reconsider the settlement for 1995 and 1996.

On April 23, 2002, Checchi wrote to inform Leiba that he was reassigning petitioners' claim for administrative costs to an Appeals Office separate from the one that had considered petitioners' previous claims.

On February 10, 2003, Darwyn Pearl (Pearl), Appeals Team Manager in Seattle, Washington, wrote to petitioners.  Pearl stated that petitioners' claim for administrative costs under section 7430 was disallowed because (1) petitioners had not substantially prevailed on the amount in controversy or on the

most significant tax issue or issues in question, and (2) respondent's position was substantially justified.

OPINION

A. Background

To qualify for an award of costs incurred in connection with an administrative proceeding at the Internal Revenue Service, a taxpayer must, inter alia, be the prevailing party. Sec. 7430(a)(1). A taxpayer is not the prevailing party and thus is not entitled to an award of administrative costs if the position of the United States in the administrative proceeding was substantially justified. Sec. 7430(c)(4)(B). The Commissioner bears the burden of proving that the position of the United States was substantially justified. Id. As discussed below, we hold that respondent has made that showing.[4]

---

[4] To qualify for an award of administrative costs, the taxpayer also must establish that he or she exhausted administrative remedies available in the Internal Revenue Service, did not unreasonably protract the proceedings, and satisfies certain net worth limitations. Sec. 7430(b) and (c)(4)(A). Respondent concedes that petitioners met those requirements.

In addition, to be a prevailing party, the taxpayer must substantially prevail as to (1) the amount in controversy, or (2) with respect to the most significant issue or set of issues presented. Sec. 7430(c)(4)(A)(i). The parties dispute whether that requirement is met. In light of our holding that respondent's position in the proceeding was substantially justified, we need not decide whether petitioners substantially prevailed.

B.   Whether Respondent's Position Was Substantially Justified

    1.   Date of Respondent's Position for Purposes of Applying the Substantially Justified Standard

For purposes of applying the substantially justified standard, the position of the United States is the Commissioner's position as of the earlier of: (1) The date of receipt by the taxpayer of the notice of decision of the Appeals Office, or (2) the date of the notice of deficiency.  Sec. 7430(c)(7)(B)(ii); Fla. Country Clubs, Inc. v. Commissioner, 122 T.C. 73, 77 (2004). Thus, respondent's position is the position stated in the Notice of Decision dated January 13, 2000, in which respondent denied petitioners' request to abate the late payment addition for 1993, 1995, and 1996.

    2.   When Is the Commissioner's Position Substantially Justified

The Commissioner's position is substantially justified if, based on all of the facts and circumstances, the Commissioner's position has a reasonable basis in both law and fact.  Pierce v. Underwood, 487 U.S. 552, 565 (1988) (construing similar language in the Equal Access to Justice Act, 5 U.S.C. sec. 504 (2000)); Powers v. Commissioner, 100 T.C. 457, 470, 473 (1993), affd. on this issue, revd. in part and remanded on other issues 43 F.3d 172 (5th Cir. 1995).  For a position to be substantially justified, there must be substantial evidence to support it. Pierce v. Underwood, supra at 564-565; Powers v. Commissioner,

<u>supra</u> at 473.  Petitioners contend that respondent's position was not substantially justified.  We disagree for reasons stated below.

    3.    <u>Whether Respondent Had a Reasonable Basis in Fact</u>

        a.    <u>Facts Known by Respondent on January 13, 2000</u>

Petitioners contend that, on January 13, 2000, respondent lacked a reasonable basis in fact relating to whether petitioners were liable for the late payment addition for 1993.  We disagree.

On January 13, 2000, respondent had the following basis in fact related to whether petitioners were liable for the addition to tax for failure to pay tax for 1993: (i) Some debts (not specified in the record) that petitioners had on January 14, 1992, were discharged in bankruptcy; (ii) petitioners had good incomes at all relevant times (e.g., for 1993, adjusted gross income of $105,060 and wages of $87,026); and (iii) other than the amount withheld, petitioners did not pay tax for 1993 when due.

        b.    <u>Information Requested by Respondent Before January 13, 2000, Which Petitioners Did Not Provide</u>

Before January 13, 2000, Gurnaby asked petitioners for specific information which petitioners did not provide by that date, including:  (i) Canceled checks and other bank and financial records to show how petitioners spent their income; (ii) documents showing that petitioners were either unable to pay

the tax or would have suffered undue hardship if they did; and (iii) documents showing that services at the private school attended by their son were not available in the public schools.

Gurnaby and Sims told petitioners and Leiba that petitioners had not established that they exercised ordinary care in providing for payment of their 1993 tax and that they had not showed that they could not pay or would have suffered undue hardship if they had paid the tax on time.

Petitioners did not provide all of the information that Sims and Gurnaby requested. Instead of responding to Sims's and Gurnaby's requests, petitioners emphasized at the administrative level and in this case that petitioners had filed for bankruptcy protection in 1991 and had their home in 1997 sold due to default under a deed of trust. Gurnaby made clear that he thought that those two events did not establish that petitioners were unable to pay their 1993 tax without undue hardship.

Petitioners conceded that they could not show that services at the private school attended by their son were not available in the public schools. Petitioners contend that information Gurnaby requested about petitioners' withholding was not relevant or readily available to them. Leiba said in one of his letters to respondent's Appeals officers that it was unlikely that petitioners would have records to support their withholding for

1993.[5]  Petitioners did not explain to respondent during the
administrative proceedings or to this Court why they did not
provide the other information that Gurnaby had requested.

In deciding whether respondent had a basis in fact, we may
take into account that respondent diligently sought but
petitioners did not provide certain relevant information.  This
situation differs from that in Powers v. Commissioner, supra, in
which the Commissioner made no effort to contact the taxpayer
before issuing the notice of deficiency.  Id. at 476.  Sims and
Gurnaby communicated extensively with petitioners and Leiba,
stated their objections to petitioners' claim, and repeatedly
asked them for specific information.

Respondent had a basis in fact for concluding that
petitioners were liable for the late payment addition for 1993.
Thus, respondent reasonably concluded that petitioners were
liable for the late payment addition for 1993.

c.    Petitioners' Contentions

Petitioners contend that respondent lacked a basis in fact
for concluding that they were liable for the late payment
addition for 1993 because (i) respondent did not adequately
consider petitioners' bankruptcy and the sale of their home due

---

[5]  There was considerable disagreement at trial about
whether documents should be admitted in evidence.  We have
considered all of the documents in the record, including
documents offered by petitioners but not admitted.  The exclusion
of documents did not affect the result in this case.

to default under a deed of trust or the fact that their withholdings increased from $3,424 in 1992 to $5,952 in 1993; and (ii) respondent incorrectly believed that petitioner Nancy Flynn separately owned a house worth $400,000 with a $300,000 mortgage. We disagree that these points show that respondent lacked a reasonable basis in fact.

Petitioners allege that respondent lost files and documents and that losing files is evidence of procedural irregularities in processing petitioners' case; however, the record does not support that allegation.

### d.   Conclusion as to Respondent's Basis in Fact

We conclude that respondent had a reasonable basis in fact on January 13, 2000, for denying petitioners' request for relief from the 1993 late payment addition.

### 4.   Whether Respondent Had a Reasonable Basis in Law

We next decide whether respondent had a reasonable basis in law on January 13, 2000, for concluding that petitioners were liable for the late payment addition for 1993.

Respondent's basis in law for that position is section 6651(a)(2), the regulations thereunder, and numerous cases citing those sections. Section 6651(a)(2) and the related regulations provide respondent with a clear basis in law for respondent's position that petitioners are liable for the late payment addition for 1993. Section 6651(a)(2) provides that taxpayers

are liable for an addition to tax for failure to pay the amount shown as tax on a return on or before the date prescribed for payment of that tax, unless the failure was due to reasonable cause and not willful neglect.  See sec. 301.6651-1(c)(1), Proced. & Admin. Regs.

Petitioners contend that (a) respondent failed to provide impartial Appeals hearings as required by section 601.106(c), Statement of Procedural Rules; and (b) respondent could have called Sims, Gurnaby, and Estoll as witnesses but did not.

We disagree that those points show respondent lacked a basis in law.  First, there is nothing in the record to suggest that respondent's administrative review in this case was improper; every indication is that it was completely proper.  Thus, this case is distinguishable from Nguyen v. Commissioner, T.C. Memo. 2001-41, and Leewaye v. Commissioner, T.C. Memo. 1988-129. Second, the record does not show that petitioners could not have subpoenaed Sims, Gurnaby, and Estoll as witnesses for trial.  If a witness is equally available to both parties and neither party calls that witness at trial, then no adverse inference is warranted.  See United States v. Rollins, 862 F.2d 1282, 1297-1298 (7th Cir. 1988); Kean v. Commissioner, 469 F.2d 1183, 1187-1188 (9th Cir. 1972), affg. on this issue and revg. on another issue 51 T.C. 337 (1968); Grossman v. Commissioner, T.C. Memo.

1996-452, affd. 182 F.3d 275 (4th Cir. 1999); <u>Gaw v.
Commissioner</u>, T.C. Memo. 1995-531.

Petitioners contend that respondent's acceptance of
petitioners' amended 1994 return based on section 108 establishes
that petitioners should be excused from the late payment addition
for 1993.  We disagree.  Respondent's acceptance of petitioners'
amended 1994 return, which reduced income for forgiveness of
indebtedness based on insolvency under section 108, may show that
petitioners were insolvent when a debt of theirs was discharged
in 1994, not that they could not pay tax on their 1993 income.

5.   <u>Conclusion</u>

We conclude that respondent had a reasonable basis in both
fact and law on January 13, 2000, for concluding that petitioners
were liable for the late payment addition for 1993.  Thus,
respondent's position in the administrative proceeding was
substantially justified, and petitioners are not entitled to an
award of administrative costs under section 7430.

To reflect the foregoing,

<u>Decision will be
entered for respondent</u>.