T.C. Memo. 2009-177

UNITED STATES TAX COURT

STEPHEN J. TROLLOPE, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 25907-06.                    Filed July 30, 2009.

David B. Porter, for petitioner.

Trent D. Usitalo, for respondent.

MEMORANDUM OPINION

HAINES, Judge:  This case is before the Court on
petitioner's motion for recovery of administrative and litigation
costs brought under section 7430 and Rule 231.[1]

---

[1]Unless otherwise indicated, section references are to the
Internal Revenue Code as amended, and all Rule references are to
the Tax Court Rules of Practice and Procedure.  Amounts are
                                            (continued...)

Respondent determined a deficiency of $1,042,674 in petitioner's Federal income tax for 2001. The deficiency arose from respondent's dividend income adjustment of $2,605,126 under sections 301 and 316. Respondent subsequently conceded the deficiency as it related to the net income adjustment.

Petitioner seeks to recover costs totaling $122,402 incurred from December 6, 2004, the date respondent confirmed that he would issue petitioner a 30-day letter, through February 11, 2008, the date of filing of this motion.

The issues for decision are: (1) Whether petitioner is entitled to an award of reasonable administrative and litigation costs; and (2) if the answer on the first issue is "yes", the amount of the awardable costs.

## Background

When the petition was filed, petitioner resided in California.

Petitioner and John Larik were each 50-percent owners of Arrow Capital Associates, Inc. (Arrow). Between March 2001 and the beginning of August 2001 petitioner and Mr. Larik created several drafts of stock purchase agreements for Arrow to purchase Mr. Larik's 50-percent interest in Arrow.

---

[1](...continued)
rounded to the nearest dollar.

Arrow lent Mr. Larik $100,000 on March 1, 2001, and $600,000 on June 1, 2001.  Arrow lent petitioner $1,895,126 on August 13, 2001.  The three loans were evidenced by promissory notes signed on or near the dates of the respective loans.

On August 15, 2001, petitioner and Mr. Larik entered into a stock purchase agreement which provided that petitioner was to purchase Mr. Larik's shares for $2,605,126.[2]  In relevant part, the stock purchase agreement states:

> B. Prior to the Effective Date [March 31, 2001], the parties agreed that, on the Effective Date, Trollope [Petitioner] would purchase the Shares from Shareholder [Mr. Larik], and Shareholder would sell the Shares to Trollope, on the terms and conditions, which are set forth hereinafter.
>
> C. At all times since the Effective Date, although Shareholder remains the record owner of the Shares as of the date of this Agreement, the parties have considered the Shares to have been acquired by Trollope.  The purpose of this Agreement is to provide for the necessary documentation to give effect to that understanding.

Section 9 of the stock purchase agreement further states:

> a.  This Agreement cancels and supersedes all other previous or contemporaneous agreements, between the parties, with the exception of the Separation Agreement,[3] whether oral or written, relating to the subject matter hereof.  This Agreement may be amended

---

[2]Specifically, petitioner was to pay $709,905 to Arrow to cover the $700,000 Arrow lent to Mr. Larik plus interest and the balance of $1,895,126 to Mr. Larik for the purchase of 1,500 shares constituting a 50-percent ownership stake in Arrow.

[3]On Aug. 15, 2001, Mr. Larik and Arrow entered into a separation agreement indicating that Mr. Larik agreed to terminate his employment with Arrow.

only pursuant to a written document signed by all parties and not by oral statements or course of conduct.

b.  This Agreement shall be binding on and inure to the benefit of the parties and their successors and assigns.

      *     *     *     *     *     *     *

g.  In the event of Shareholder [Mr. Larik]'s death or any incapacity, <u>Trollope</u> [petitioner] <u>shall not have the right to terminate this Agreement</u> and agrees, if any monies are still outstanding and payable to Shareholder under this Agreement, to pay such monies to Shareholder or his estate (emphasis added).

The stock purchase agreement further provides for Arrow's transfer to Mr. Larik of corporate assets consisting of an automobile and a golf membership.

Immediately following the signing of the stock purchase agreement, petitioner paid Mr. Larik $1,895,126 and Mr. Larik transferred 1,500 Arrow shares to petitioner.  Petitioner assumed Mr. Larik's $700,000 in shareholder loans and $9,905 of interest secured by Mr. Larik's 1,500 shares.[4]  Arrow transferred corporate assets consisting of a golf course membership and a car to Mr. Larik.  As a result of these transactions, petitioner became the sole shareholder of Arrow.

On August 16, 2001, petitioner offered to sell Arrow 1,500 shares of common stock in exchange for the cancellation of the $1,895,126 loan.  Arrow accepted the offer and purchased

---

[4]The loan was not repaid by petitioner to Arrow, but rather was "assumed" by petitioner through debits and credits to Arrow's general ledger.

petitioner's 1,500 shares and canceled both petitioner's $1,895,126 loan and the $709,905 of debt and interest petitioner had assumed from Mr. Larik.

After the transaction of August 16, 2001, but before June 21, 2004, respondent audited Arrow's 2001 return.  An effort to obtain a statement from Mr. Larik describing the stock purchase transaction failed because the business relationship between petitioner and Mr. Larik had soured.

On or about June 21, 2004, respondent commenced an examination of petitioner's 2001 Form 1040, U.S. Individual Income Tax Return.  Sometime in December 2004, respondent issued petitioner a 30-day letter indicating that respondent intended to treat Arrow's purchase of the shares petitioner received from Mr. Larik as a constructive dividend.

On August 17, 2006, petitioner's representatives held a conference with Internal Revenue Service Appeals Officer Barbara Byrnes.  At this conference petitioner's representatives informed Ms. Byrnes that petitioner had not received a constructive dividend from Arrow, but rather had stepped in to facilitate a stock redemption as Arrow's agent.

On September 26, 2006, respondent issued a notice of deficiency to petitioner.  Petitioner filed a timely petition with this Court, and on February 6, 2007, respondent filed his answer.  At the time respondent filed his answer respondent had

received a final draft and preliminary drafts of the stock purchase agreement, petitioner's own statements regarding the intention of the parties involved in the transaction, and certain informal correspondence.

Petitioner submitted materials to respondent during the formal discovery process in December 2007 which caused respondent to concede the case. On January 28, 2008, the parties filed a stipulation of settled issues in which respondent conceded the dividend income adjustment of $2,605,126 and the itemized deductions adjustment of $64,497. Petitioner's motion for an award of reasonable litigation and administrative costs was filed on February 11, 2008.

## Discussion

Taxpayers are eligible for awards of reasonable fees and costs incurred in certain administrative and court proceedings if they meet the requirements of section 7430. To qualify under section 7430, taxpayers must establish that they: (1) Were the prevailing party within the meaning of section 7430(c)(4); (2) exhausted the applicable administrative remedies;[5] (3) did not unreasonably protract the proceedings; and (4) have claimed costs that are reasonable.

---

[5]This factor is relevant only for the award of reasonable litigation costs.

Respondent concedes that petitioner exhausted all administrative remedies and did not unreasonably protract the proceedings. Respondent contends: (1) Petitioner was not a prevailing party because respondent's position "was substantially justified" under section 7430(c)(4)(B)(i); (2) petitioner was not a prevailing party because he failed to meet the net worth requirements of section 7430(c)(4)(A)(ii); and (3) the amount of costs petitioner claims is not reasonable under section 7430(a)(2) and (c)(1). Because we find respondent's position to have been substantially justified, we need not consider the latter two arguments.

"Substantially justified" is defined as "justified to a degree that could satisfy a reasonable person" and having a "reasonable basis both in law and fact". Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quotation marks omitted);[6] Huffman v. Commissioner, 978 F.2d 1139, 1147 n.8 (9th Cir. 1992), affg. in part, revg. in part and remanding T.C. Memo. 1991-144. It is respondent's burden to prove that his position was substantially justified. See sec. 7430(c)(4)(B)(i). Respondent's position may be incorrect and yet be substantially justified "if a reasonable

---

[6]Although the dispute in Pierce v. Underwood, 487 U.S. 552 (1988), arose under the provisions of the Equal Access to Justice Act (EAJA), 28 U.S.C. sec. 2412(d), the relevant provisions of the EAJA are almost identical to sec. 7430. Cozean v. Commissioner, 109 T.C. 227, 232 n.9 (1997). Accordingly, we consider the holding in Pierce v. Underwood, supra, to be applicable to the case before us.

person could think it correct". See <u>Pierce v. Underwood</u>, <u>supra</u> at 566 n.2. Whether respondent acted reasonably ultimately turns on the available information which formed the basis for respondent's position as well as on the relevant law. See <u>Coastal Petroleum Refiners, Inc. v. Commissioner</u>, 94 T.C. 685, 688-690 (1990). The fact that the Commissioner eventually loses or concedes a case does not by itself establish that the Commissioner's position is unreasonable. <u>Maggie Mgmt. Co. v. Commissioner</u>, 108 T.C. 430, 443 (1997). However, it is a factor that may be considered. <u>Id.</u>

The Court of Appeals for the Ninth Circuit, to which an appeal in this case would lie, has held that the reasonableness of the Commissioner's position is analyzed separately for the administrative and judicial proceedings. <u>Huffman v. Commissioner</u>, <u>supra</u> at 1143. Respondent's position was consistent throughout the administrative and litigation process. The Appeals officer took the position, on the basis of petitioner's stock purchase agreement, that petitioner received a constructive dividend from Arrow. Respondent took the identical position before this Court in his answer.[7]

---

[7]The position of the Commissioner in the proceeding in this Court is the position set forth in the answer. <u>Huffman v. Commissioner</u>, 978 F.2d 1139, 1147-1148 (9th Cir. 1992), affg. in part and revg. in part and remanding T.C. Memo. 1991-144; <u>Maggie Mgmt. Co. v. Commissioner</u>, 108 T.C. 430, 442 (1997).

Petitioner argues that respondent is not substantially justified because he (1) failed to investigate the facts to justify the position in the 30-day letter and his answer and (2) applied an unreasonable legal position to the facts. We disagree.

## I. Investigation of Facts

A significant factor in determining whether the Commissioner acted reasonably as of a given date is whether, on or before that date, the taxpayer presented all relevant information under the taxpayer's control. Corson v. Commissioner, 123 T.C. 202, 206-207 (2004); sec. 301.7430-5(c)(1), Proced. & Admin. Regs. Thus, whether the Commissioner acted reasonably may turn upon the available facts which formed the basis for the Commissioner's position. DeVenney v. Commissioner, 85 T.C. 927, 930 (1985); see Nalle v. Commissioner, 55 F.3d 189, 191-192 (5th Cir. 1995), affg. T.C. Memo. 1994-182.

Respondent has shown that the only evidence he had access to during the administrative appeal process and at the time of his answer was the stock purchase agreement and various documents petitioner prepared for the administrative appeal process and litigation. Petitioner maintains, relying on Powers v. Commissioner, 100 T.C. 457 (1993), revd. in part on other grounds 43 F.3d 172 (5th Cir. 1995), that it was respondent's duty to audit petitioner's return and to uncover more information before

-10-

issuing a notice of deficiency.  In <u>Powers</u>, the Commissioner made no effort to contact the taxpayer before issuing the notice of deficiency.  By contrast, respondent engaged in a multiyear dialogue with petitioner and Arrow before issuing the notice of deficiency and gave petitioner ample time during the administrative appeal process to submit materials supporting petitioner's position.  See <u>Flynn v. Commissioner</u>, T.C. Memo. 2005-8.

Petitioner submitted materials to respondent during the formal discovery process in December 2007 which caused respondent to concede the case.  Petitioner has not alleged that these materials were unavailable to him earlier in the dispute. Accordingly, we find that petitioner did not furnish respondent with all of the relevant information under his control.  See <u>Corson v. Commissioner</u>, <u>supra</u> at 206-207.

## II.  Reasonableness of Legal Position

Respondent contends that his position to apply dividend treatment was substantially justified during the administrative appeal process and at the time of his answer.  Petitioner's stock purchase agreement specifies that petitioner had the primary obligation to acquire Mr. Larik's stock, even in the event of Mr. Larik's death.  The agreement does not indicate that the stock purchase was part of an integrated transaction intended to redeem Mr. Larik's shares.  The record indicates that the stock purchase

agreement was the only primary source document regarding the transactions that respondent possessed during the administrative appeal process and at the time of his answer.[8]  Respondent argues that this agreement, coupled with petitioner's subsequent transfer of 1,500 shares of Arrow stock to Arrow, could lead a reasonable person to conclude that petitioner received a constructive distribution from Arrow.

The substantive issue in controversy was whether the sale of Mr. Larik's shares to petitioner and the subsequent purchase of the shares by Arrow should be treated as a single integrated transaction resulting in exchange treatment under section 302(a) or as a series of independent transactions resulting in a dividend to petitioner under sections 301(a) and 302(b)(1). Whether a distribution in connection with a cancellation or redemption of stock is essentially equivalent to the distribution of a taxable dividend under sections 301(a) and 302(b)(1) depends upon the facts and circumstances of each case.  See Zenz v. Quinlivan, 213 F.2d 914 (6th Cir. 1954).

We have applied dividend treatment where a shareholder has the primary obligation to acquire stock, but a corporation

---

[8]Petitioner also sent respondent letters during the administrative appeal process outlining his and Mr. Larik's intent to integrate the transactions.  Because of the partisan nature of these documents, we do not give them as much weight as the stock purchase agreement, which was ostensibly prepared for no other purpose than to effect the intent of petitioner and Mr. Larik.

instead redeems and relieves the shareholder of his obligation. See, e.g., Schroeder v. Commissioner, 831 F.2d 856 (9th Cir. 1987), affg. Skyline Memorial Gardens, Inc., T.C. Memo. 1985-334; Sullivan v. United States, 363 F.2d 724 (8th Cir. 1966); Wall v. United States, 164 F.2d 462 (4th Cir. 1947); see also Rev. Rul. 69-608, 1969-2 C.B. 42. Petitioner argues that respondent unreasonably applied the law to the facts because petitioner had no preexisting contract to buy Mr. Larik's shares and received no financial gain from the subsequent transfer of those shares to Arrow.

For a position to be substantially justified, "substantial evidence" must exist to support it. Pierce v. Underwood, 487 U.S. at 564. "That phrase does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. at 564-565 (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Commissioner's position may be incorrect but substantially justified "if a reasonable person could think it correct". Id. at 566 n.2.

We find that the stock purchase agreement, standing by itself, constituted evidence adequate to support respondent's legal conclusion. See id. at 564. Petitioner, as president and chief executive officer of Arrow, could have stated in the corporate minutes, the loan documents, the stock purchase

agreement, or the separation agreement that it was the intention of petitioner and Mr. Larik to treat the individual transactions as part of an overall integrated transaction, but he did not do so.[9]  On the basis of the evidence available to respondent, as well as the facts and circumstances, we hold that respondent's legal position was substantially justified in both the administrative and judicial proceedings.

III. Conclusion

Because we conclude that petitioner was not the prevailing party with respect to any of the issues, he is precluded from recovering administrative and litigation costs, and we need not address whether petitioner has satisfied the other elements of section 7430.

To reflect the foregoing,

An appropriate order and

decision will be entered.

---

[9]The record indicates that respondent had no access to any primary source documents other than the stock purchase agreement before the initiation of formal discovery.  However, the aforementioned documents were readily available to petitioner.