T.C. Memo. 2015-100

UNITED STATES TAX COURT

HOWARD W. MYLANDER AND JACQUELYN L. MYLANDER, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 22283-12.                               Filed June 1, 2015.

Steven E. Alkire, for petitioners.

Kimberly L. Clark and Nhi T. Luu, for respondent.

MEMORANDUM OPINION

VASQUEZ, Judge:  This case is before the Court on petitioners' motion for

award of administrative and litigation costs pursuant to section 7430 and Rule 231

(petitioners' motion).[1]  Since neither party requested a hearing on this matter and

_____

        [1] Unless otherwise indicated, all section references are to the Internal

(continued...)

**[\*2]** no material fact is in dispute, we conclude that a hearing is not necessary.

See Rule 232(a)(2).  Accordingly, we decide petitioners' motion on the basis of

the parties' submissions and the existing record.[2]  See Rule 232(a)(1).

### Background

The underlying facts of this case are set out in detail in Mylander v.

Commissioner, T.C. Memo. 2014-191 (Mylander I).  We summarize the factual

and procedural background briefly here and make additional findings as required

for our ruling on the instant motion.

At all relevant times, petitioners resided in Idaho.

### I.  Guaranty of the Murray Debt

As we discussed in greater detail in Mylander I, in 1990 petitioners agreed

to guarantee $300,000 of a $500,000 debt owed by Rodney and Katherine

Ledbetter to Hershell Murray.  The Ledbetters defaulted on their debt to Mr.

Murray, and in 1994 Mr. Murray obtained a judgment against petitioners in the

---

[1] (...continued)
Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  All monetary amounts have been rounded to the nearest dollar.

[2] Petitioners object to the admissibility of 11 of the 13 documents submitted with respondent's response to petitioners' motion.  We address and rule on these evidentiary disputes in the discussion infra pp. 5-10.

[*3] District Court of the Fifth Judicial District of the State of Idaho, in and for the County of Blaine (State court) for $310,000. In December 2001 Mr. Murray entered into a covenant not to execute with petitioners in which Mr. Murray agreed not to execute on the State court's judgment as long as petitioners made regular payments to him until they had paid off the full $300,000 as set forth in the guaranty. Petitioners began making payments to Mr. Murray pursuant to the covenant not to execute and continued making payments through 2009.

By mid-2010 petitioners still owed Mr. Murray $202,000. They offered to make a $100,000 lump-sum payment in exchange for a cancellation of the remaining balance, and Mr. Murray accepted the offer. They did not report any cancellation of indebtedness income (COD income) on their 2010 tax return.

Respondent later initiated an examination of petitioners' 2009 and 2010 tax returns. On March 7, 2012, respondent issued a Form 4549, Income Tax Examination Changes, showing the results of the examination, including a $102,000 adjustment for COD income. Petitioners responded in a letter dated March 15, 2012 (March 15 letter). In the March 15 letter petitioners generally objected to the results of the examination, requested a meeting with an Appeals officer, and appointed their certified public accountant to represent them at the meeting. With regard to the canceled debt, petitioners argued that it was not

**[*4]** taxable income because they were guarantors on the debt and the debt arose from Mr. Ledbetter's theft of some of their assets.

Respondent issued a notice of deficiency, dated August 9, 2012, determining deficiencies of $10,168 for 2009 and $35,000 for 2010. A $102,000 adjustment stemming from the COD income constituted most of the deficiency for 2010.

II.    Discovery and Procedural History

On September 6, 2012, petitioners, who were not represented by counsel at the time, filed their petition with this Court. On October 31, 2012, respondent filed his answer. On July 10, 2013, Steven Alkire entered an appearance as petitioners' counsel. On August 7, 2013, respondent mailed to petitioners a so-called Branerton letter. See Branerton Corp. v. Commissioner, 61 T.C. 691 (1974). The Branerton letter summarized respondent's understanding of the case, requested that petitioners send him any documentation or legal authority in support of their positions, and proposed a telephone conference. On August 19, 2013, petitioners sent a letter to respondent asserting their positions on various issues and identifying Landreth v. Commissioner, 50 T.C. 803 (1968), as legal authority for their position as to the COD income issue. Enclosed with the letter were copies of various documents related to the guaranty, including the original

[*5] 1990 guaranty agreement and an amended guaranty agreement dated February 1, 1993.

On August 21, 2013, respondent sent petitioners another letter acknowledging their August 19 letter and requesting further documents and information. On September 3, 2013, respondent issued a request for admissions, a request for production of documents, and interrogatories. On October 4, 2013, petitioners submitted their responses to respondent's requests for admissions. On November 4, 2013, petitioners sent respondent a letter enclosing various documents, including a covenant not to execute between Mr. Murray and petitioners dated April 26, 1994, and an order to renew judgment issued by the State court on March 15, 1999. On November 12, 2013, petitioners submitted their responses to respondent's requests for production and their answers to respondent's interrogatories.

Discussion

We consider first petitioners' objections to receipt of certain exhibits, then the general considerations regarding motions for litigation costs,[3] and then

---

[3] Petitioners' motion is for administrative costs and litigation costs, but they have not claimed any costs incurred before July 2013, well after the filing of the petition. "Costs incurred after the filing of a petition with the United States Tax Court" are litigation costs, not administrative costs. Sec. 301.7430-4(c)(3),

(continued...)

[*6] whether respondent established that his position in the instant proceeding was substantially justified.

I.    Evidence

As part of his response to petitioners' motion, respondent submitted 13 exhibits, A through M.  Petitioners object to the introduction of 11 of these exhibits:[4]  (1) Exhibits A and B on the grounds that they are part of the record of proceedings on the administrative level and are not admissible under Greenberg's Express v. Commissioner, 62 T.C. 324 (1974); (2) Exhibits A, B, D, E, and F on the grounds that those documents were generated in connection with efforts to settle the case and are inadmissible under rule 408 of the Federal Rules of Evidence (rule 408); (3) Exhibit C on the grounds and to the extent that it differs from another document already stipulated by the parties; and (4) Exhibits G through J and L on the grounds that the exhibits are discovery requests and

---

[3] (...continued)
Proced. & Admin. Regs.  We therefore focus on the dispute over litigation costs for the remainder of this opinion.

[4] Petitioners do not object to the introduction of Exhibits K and M.  Exhibit K is petitioners' November 4, 2013, letter.  Exhibit M is respondent's computation of costs pursuant to Rule 155.  Petitioners state that they agree with respondent's computation.  Accordingly, we adopt respondent's computation of costs.

**[\*7]** responses that have not been properly introduced into evidence under Rule 70(e) and are not relevant.

A.     Exhibits Not Barred by Greenberg's Express

Exhibit A is petitioners' March 15 letter, which includes a copy of respondent's Form 4549.  Exhibit B is an internal memorandum written by an Appeals officer within the Office of Appeals, summarizing a meeting he had with petitioners.  Both exhibits contain documents that form part of the administrative record, and petitioners argue that the administrative record is "simply irrelevant", citing Greenberg's Express v. Commissioner, 62 T.C. 324.  Indeed, for most purposes we will not look behind a notice of deficiency to examine the evidence used, the propriety of the Commissioner's motives, or the administrative policies or procedures used in making the determination.  Id. at 327.  However, in the context of a motion for litigation costs, we routinely consider facts that show whether the Commissioner's position was substantially justified, including events preceding the date the notice of deficiency was issued.  See Lennox v. Commissioner, 998 F.2d 244, 247-248 (5th Cir. 1993), rev'g in part and remanding T.C. Memo. 1992-382; Powers v. Commissioner, 100 T.C. 457, 479-480 (1993), aff'd in part and rev'd in part, 43 F.3d 172 (5th Cir. 1995); Don Casey

**[\*8]** <u>Co. v. Commissioner</u>, 87 T.C. 847, 862 (1986); <u>Williford v. Commissioner</u>, T.C. Memo. 1994-135.  Accordingly, we overrule petitioners' relevance objection.

        B.      <u>Exhibits Not Barred by rule 408</u>

Exhibit D is respondent's <u>Branerton</u> letter, Exhibit E is petitioners' August 19 response to the <u>Branerton</u> letter, and Exhibit F is respondent's August 21 letter. Petitioners argue that Exhibits D through F, along with Exhibits A and B, are inadmissible under rule 408 as documents generated in efforts to settle the case.

Relevant evidence is generally admissible unless specifically barred by the United States Constitution, a Federal statute, another Federal Rule of Evidence, or other rules prescribed by the Supreme Court.  Fed. R. Evid. 402.  Rule 408(a) provides that evidence of "conduct or a statement made during compromise negotiations" is not admissible "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction".  Rule 408(a) is inapplicable, however, "when compromise evidence is offered for a purpose other than to prove the validity, invalidity, or amount of a disputed claim."  Fed. R. Evid. 408 advisory committee note (2006); <u>see also</u> rule 408(b).

Respondent submitted Exhibits A, B, D, E, and F for the purpose of demonstrating that petitioners had not provided respondent with all relevant

**[*9]** documents under their control or identified their legal authorities before the filing of the answer. Consequently, these exhibits are relevant to whether respondent's position was substantially justified. These exhibits have <u>not</u> been offered to prove the validity, invalidity, or amount of a disputed claim--questions that were resolved in <u>Mylander I</u>. Therefore, to the extent that these exhibits constitute evidence generated during compromise negotiations, they do not fall under the barred purposes stated in rule 408(a) and are admissible under rule 408(b). Petitioners have not raised any other objections to the admissibility of these exhibits. Accordingly, we overrule petitioners' rule 408 objection and admit Exhibits A, B, D, E, and F into evidence.

C.    <u>Document Already Stipulated</u>

Exhibit C is a copy of the notice of deficiency. The parties previously stipulated a version of this document, and that version was subsequently admitted. Petitioners object to the receipt of Exhibit C to the extent that it differs from the already stipulated version. We do not rely upon Exhibit C in deciding this motion, and therefore we overrule petitioners' objection as moot.

D.    <u>Introduction and Relevance of Discovery Requests and Responses</u>

Exhibits G, H, I, J, and L are various of respondent's discovery requests and responses by petitioners exchanged between August 4 and November 12, 2013.

**[\*10]** Petitioners argue that we should not receive these exhibits because (1) they have not been properly introduced into evidence as required under Rule 70(e) and (2) they are not relevant. We disagree.

Rule 232(b)(7) requires the Commissioner to provide "the basis for the Commissioner's disagreeing with" the moving party's allegations. These exhibits provide evidence supporting respondent's basis for disagreeing with petitioners' motion. Moreover, in claims for litigation costs, we often consider evidence not previously offered into evidence at the trial of the underlying substantive tax issues. Haas & Assocs. Accountancy Corp. v. Commissioner, 117 T.C. 48, 56-57 (2001) (citing O'Bryon v. Commissioner, T.C. Memo. 2000-379), aff'd, 55 Fed. Appx. 476 (9th Cir. 2003). Finally, these exhibits were introduced for purposes of demonstrating that petitioners did not provide relevant information and documents to respondent until after the answer was filed. This is relevant to respondent's assertion that his position was substantially justified.

Accordingly, we overrule petitioners' Rule 70(e) and relevance objections and admit into evidence Exhibits G, H, I, J, and L.

[*11] II.    Motion for Litigation Costs

A.    Background

Section 7430 provides for the award of administrative and litigation costs to a taxpayer in a court proceeding brought against the United States involving the determination of any tax, interest, or penalty pursuant to the Internal Revenue Code.  An award of litigation costs may be made where the taxpayer:  (1) is the "prevailing party"; (2) exhausted available administrative remedies; (3) did not unreasonably protract the proceeding; and (4) claimed reasonable administrative and litigation costs.  Sec. 7430(a), (b)(1), (3), (c).  These requirements are conjunctive, and failure to satisfy any one will preclude an award of costs to the taxpayer.  See Minahan v. Commissioner, 88 T.C. 492, 497 (1987).

B.    Prevailing Party

To be a "prevailing party":  (1) the taxpayer must substantially prevail with respect to either the amount in controversy or the most significant issue or set of issues presented; and (2) at the time the petition in the case is filed, the taxpayer must meet the net worth requirement of 28 U.S.C. sec. 2412(d)(2)(B).  Sec. 7430(c)(4)(A).  A taxpayer, however, will not be treated as the prevailing party if the Commissioner establishes that his position was substantially justified.  Sec. 7430(c)(4)(B).  For the purposes of the court proceedings, the Commissioner's

[*12] position is that which was set forth in the answer.  Sec. 7430(c)(7)(A);

Huffman v. Commissioner, 978 F.2d 1139, 1147-1148 (9th Cir. 1992), aff'g in

part, rev'g in part T.C. Memo. 1991-144; Maggie Mgmt. Co. v. Commissioner,

108 T.C. 430, 442 (1997).

### 1.      Net Worth Requirement

Respondent concedes that petitioners substantially prevailed with respect to

the amount in controversy and the most significant issue presented but argues that

petitioners have failed to prove that they meet the net worth requirement under 28

U.S.C. sec. 2412(d)(2)(B).  If a taxpayer, in a motion for litigation costs, fails to

sufficiently establish net worth and the Commissioner challenges whether the

taxpayer has met the net worth requirement the taxpayer must provide additional

evidence.  See Estate of Hubberd v. Commissioner, 99 T.C. 335, 341 (1992);

Dixson Int'l Serv. Corp. v. Commissioner, 94 T.C. 708, 719 (1990).

Petitioners submitted affidavits with their motion stating that they each have

a net worth of less than $2 million and thus meet the net worth requirement.

Respondent argued that petitioners' sworn statements are inadequate because

petitioners failed to submit any documentary evidence with respect to their net

worth and did not explain how they calculated net worth.  In response, petitioners

submitted a financial statement prepared by their certified public accountant.  We

**[*13]** find that this financial statement is sufficient evidence and that they meet the net worth requirement.

> 2.      Whether Respondent's Litigating Position Was Substantially Justified

Petitioners meet both requirements under section 7430(c)(4)(A) to be a prevailing party. As previously stated, however, respondent also argues that petitioners cannot be the prevailing party because respondent's litigating position was substantially justified. See sec. 7430(c)(4)(B).

A position is substantially justified if it is justified to a degree that could satisfy a reasonable person and has a reasonable basis in both fact and law. Pierce v. Underwood, 487 U.S. 552, 565 (1988); Huffman v. Commissioner, 978 F.2d at 1147; Swanson v. Commissioner, 106 T.C. 76, 86 (1996). The determination of reasonableness is based on all of the facts and circumstances surrounding the proceeding and the legal precedents relating to the case. Coastal Petroleum Refiners, Inc. v. Commissioner, 94 T.C. 685, 694-695 (1990). A position has a reasonable basis in fact if there is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Pierce, 487 U.S. at 565. A position has a reasonable basis in law if legal precedent substantially supports the Commissioner's position given the facts available to the Commissioner.

**[*14]** Coastal Petroleum Refiners, Inc. v. Commissioner, 94 T.C. at 688.

Determining the reasonableness of the Commissioner's position requires considering what the Commissioner knew at the time he took his position. Rutana v. Commissioner, 88 T.C. 1329, 1334 (1987); DeVenney v. Commissioner, 85 T.C. 927, 930 (1985). The justification for each of the Commissioner's positions must be independently determined. See Swanson v. Commissioner, 106 T.C. at 92, 97.

The fact that the Commissioner loses on the merits or concedes the case does not establish that a position was not substantially justified; however, it is a factor to be considered. Powers v. Commissioner, 100 T.C. at 471.

Respondent argues that his position was substantially justified because petitioners did not provide all relevant information under their control until after the answer was filed and that, regardless of the documents provided, his position was substantially supported by the legal precedent established by United States v. Kirby Lumber Co., 284 U.S. 1 (1931). Petitioners do not address respondent's first argument, except to object to the introduction of evidence submitted by respondent's counsel with respondent's response. See supra pp. 5-10. As to the second argument, petitioners argue that respondent's position was unreasonable on the basis of precedents set by Landreth v. Commissioner, 50 T.C. 803, and

[*15] <u>Bradford v. Commissioner</u>, 233 F.2d 935 (6th Cir. 1956), <u>rev'g</u> 22 T.C. 1057 (1954).

a.      <u>Petitioners Did Not Provide All Relevant Information</u>.

A significant factor in deciding whether the Commissioner's position was substantially justified is whether, on or before the date the Commissioner assumed the position, the taxpayer provided "'all relevant information under the taxpayer's control and relevant legal arguments supporting the taxpayer's position to the appropriate Internal Revenue Service personnel.'" <u>Corson v. Commissioner</u>, 123 T.C. 202, 206-207 (2004) (quoting section 301.7430-5(c)(1), Proced. & Admin. Regs.).

As the exhibits that we have admitted into evidence show, petitioners did not provide all documents relevant to their defense on the COD income issue before the answer had been filed. These documents included the guaranty agreement, the covenant not to execute, and the order to renew judgment. Petitioners also did not identify <u>Landreth</u>, or any other case, as legal authority supporting their position until August 2013--almost 10 months after the answer had been filed.

[*16]       b.      <u>Respondent's Position That Landreth Was</u>
              <u>Distinguishable Was Substantially Justified</u>.

Respondent argues that his litigating position was also substantially justified because his position was substantially supported by <u>Kirby Lumber Co.</u> and the so-called freeing-of-assets theory of COD income.  Petitioners argue that respondent's litigating position could not have been substantially supported because it runs contrary to an "87 year unbroken chain of legal analysis", in which courts have looked at the overall transaction to determine whether a taxpayer has been enriched by a cancellation of debt.

Both parties' arguments miss the mark.  The more relevant issue is whether it was reasonable for respondent to take the position that <u>Landreth</u> is distinguishable from the instant case.  We find that it was.

The multiple transactions underlying this case came together to form a complex set of facts.  In determining whether <u>Landreth</u> was distinguishable in <u>Mylander I</u>, we considered several aspects of the various transactions, including whether petitioners had received any consideration in exchange for their guaranty.  Some of the facts we considered in reaching our decision were first introduced or developed at trial.  Although we ultimately decided that <u>Landreth</u> was not distinguishable, on the basis of facts available to respondent at the relevant times,

**[*17]** we find that his position at those times was reasonable.  Accordingly, we find that respondent was substantially justified in taking the position that <u>Landreth</u> was distinguishable.

III.    <u>Conclusion</u>

For the reasons stated above, we find that respondent's litigating position was substantially justified.  Petitioners, therefore, are not a prevailing party.  Accordingly, we will deny petitioners' motion.  In reaching our holdings herein, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>An appropriate order will be issued</u>.